## BESSIE L. PICK

### *vs.*

## STATE OF MARYLAND.

*Grand Jury—Testimony of Accused—Validity of Indictment.*

The competency of testimony before the grand jury will not be inquired into by the courts. p. 196

The voluntary testimony of the accused before the grand jury is not ground for quashing the indictment. p. 198

Under Code, art. 27, sec. 654 (volume 4), the court has discretion as to whether to sentence to imprisonment in jail, in the penitentiary, or in the house of correction. p. 199

*Decided April 4th, 1923.*

Appeal from the Criminal Court of Baltimore City (GORTER, C. J.).

Criminal proceeding against Bessie L. Pick. From judgments of convictions and sentences, defendant appeals. Affirmed.

The cause was presented on briefs to BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*Isaac Lobe Straus, William Pinkney White, Jr.,* and *Walter E. Sinn,* for the appellant.

*Alexander Armstrong, Attorney General, Lindsay C. Spencer, Assistant Attorney General,* and *Robert F. Leach, Jr., State's Attorney for Baltimore City,* for the State.

BRISCOE. J., delivered the opinion of the Court.

Bessie L. Pick, of Baltimore City, was, on the 2nd day of August, 1920, indicted jointly with one Frank D. Schultz, in the Criminal Court of Baltimore City, for larceny of certain sums of money and with receiving stolen goods. The indictments contained two counts.

The first count charged Bessie L. Pick, as principal, and Frank D. Schultz as accessory before the fact, and the second count charged them with receiving the money, knowing it to have been stolen. The four indictments were in substance the same, except differing in the amounts charged to have been stolen and received, and the date of the commission of the offenses.

Frank D. Schultz died on the 13th day of June, 1920, and the cases abated as to him, but were subsequently tried as to Bessie L. Pick. She was acquitted on the second count of each indictment, but adjudged guilty of larceny on the first count of the indictments, and sentenced to be confined in the Baltimore City jail for the period of two years on each indictment, the sentences to run concurrently.

The pleadings in the case, it will be seen, are in some respects somewhat unusual under the practice in this State of presenting to the court the facts and questions relied upon by the traverser in cases of this character.

Waiving, however, the technical objections as to the pleadings, we will consider the real questions presented by the rulings of the court, which the traverser contends were in violation of her constitutional rights, and which action of the court, on these rulings, was reversal error.

It appears from the record that, on the 24th of March, 1922, the traverser filed a motion to quash each indictment, alleging in substance that each indictment was found in violation of the Declaration of Rights and the Constitution and laws of the State of Maryland and also of the Constitution of the United States.

The reasons and grounds for the motion, as stated in the record, are as follows:

"1. Because after she, the said Bessie L. Pick, had been arrested by reason of the matters and upon the charges set forth in said indictment, and taken into custody, and whilst she was under bail, and without counsel or any professional aid or advice, and had been advised by the police authorities of the State, who had her in custody, that counsel was unneces- sary, inasmuch as the State intended to help her, she, the said Bessie L. Pick, was, by a subpoena, duly di- rected and issued to and served upon her, commanded and required to appear before the Grand Jurors of the State of Maryland, for the body of the City of Bal- timore, by which Grand Jurors said indictment was found, and without being warned that her testimony would be used against her, to testify before and unto said Grand Jurors against herself and the said Frank D. Schultz mentioned in said indictment and jointly indicted with her therein, with respect to the matters and facts referred to, alleged and charged in said in- dictment; that said indictment was directly found upon said testimony so given by the said Bessie L. Pick, under compulsory process and under the other circumstances and conditions aforesaid, and that said indictment and the proceedings upon which it was found were in violation of the Declaration of Rights and the Constitution and Laws of the State of Mary- land, by reason whereof any prosecution, conviction or judgment upon or by virtue of said indictment would be in violation of the fundamental laws of the State of Maryland and of the rights and immunities guaranteed to this defendant thereby.

"2. And because after she, the said Bessie L. Pick, had been arrested by reason of the matters and upon the charges set forth in said indictment, and taken into custody, and whilst she was under bail and with- out counsel or any professional aid or advice, and had been advised by the police authorities of the State,

who had her in custody, that counsel was unnecessary, inasmuch as the State intended to help her, she, the said Bessie L. Pick, was, by a subpoena, duly directed and issued to and served upon her, commanded and required to appear before the Grand Jurors of the State of Maryland, for the body of the City of Baltimore, by which Grand Jurors said indictment was found, and without being warned that her testimony would be used against her, to testify before and unto the said Grand Jurors against herself and the said Frank D. Schultz, mentioned in said indictment and jointly indicted with her therein, with respect to the matters and facts referred to, alleged and charged in said indictment; that said indictment was directly found upon said testimony so given by the said Bessie L. Pick under compulsory process and under the other circumstances and conditions aforesaid, and that said indictment and the proceedings upon which it was found were in violation of the Constitution of the United States, and any prosecution thereof or thereupon and any conviction and judgment thereon would deprive this defendant, a citizen of the State of Maryland and of the United States, of her rights, privileges and immunities without due process of law and against the law of the land, and deny her the equal protection of the laws."

On April 5th, 1922, the State filed what is called an answer to the traverser's motion to quash the indictments. This answer is set out in the record, contains eleven long paragraphs, and covers over twenty pages of the record.

The traverser thereupon excepted to the answer filed by the State, upon the ground that it was bad in substance and insufficient in law.

Subsequently, the exceptions filed to the answer, and the motions to quash each indictment, were heard by the court and all of them were overruled.

From the action of the court in so holding, the traverser excepted, and these rulings form the basis of her first and second bills of exceptions.

Thereafter the traverser demurred to each and every count of the indictments against her, upon the ground that the indictments and each and every count thereof was bad in substance and defective in law. The demurrer to each indictment was overruled by the court below, and the traverser then submitted to trial before the court, under the plea of not guilty, with the result already stated.

There was no error, we think, in overruling the motion to quash the indictments, under the facts disclosed by the record in this case.

The law is well settled, that the competency of testimony before the grand jury will not be inquired into by the courts.

In *Holt* v. *United States,* 218 U. S. 245, it is said: "It is pressed with more earnestness that the court erred in not granting leave to withdraw the plea of not guilty, and to interpose a plea in abatement and motion to quash. The ground on which leave was asked was an affidavit of the prisoner's counsel that they had been informed by Captain Newton, of the Coast Artillery Corps, that he testified before the grand jury to admissions by the prisoner, but that these admissions were obtained under circumstances that made them incompetent. The affidavit added that, aside from the above testimony, there was very little evidence against the accused. Without considering how far, if at all, the court is warranted in inquiring into the nature of the evidence on which a grand jury has acted, and how far, in case of such an inquiry, the discretion of the trial court is subject to review (*United States* v. *Rosenburgh,* 7 Wall. 580), it is enough to say that there is no reason for reviewing it here. All that the affidavit disclosed was that evidence in its nature competent, but made incompetent by circumstances, had been considered along with the rest. The abuses of criminal practice would be enhanced if indictments could be upset on such a

ground.  *McGregor* v. *United Statess,* 69 C. C. A. 477, 134
Fed. 187, 192; *Radford* v. *United States,* 63 C. C. A. 491,
129 Fed. 49, 51; *Chadwick* v. *United States,* 72 C. C. A.
343, 141 Fed. 225, 235."

In *United States* v. *Swift,* 186 Federal, 1002, it is said:

"The cases are uniform to the effect that, except in those
states in which, by statute, indictments are required to be
returned on 'legal' or 'competent' evidence, the courts will
not review the evidence received by a grand jury for the
purpose of passing upon its competency.  In the first place,
no official record of the evidence introduced before the grand
jury ordinarily is kept.  In the second place, if, on a motion
to quash, the competency of the evidence presented could be
inquired into, the trial courts would be obliged to sit as
courts of review, to examine into the correctness of every
ruling made upon the evidence by the grand jurors.  The
obstructions to justice and the unnecessary and uncalled-for
waste of time, and consequent expense to the state as well
as to defendants, which would result from such a course, are
too obvious to need comment.

"In addition to this, the grand jurors are laymen.  They
do not know, and cannot be expected to know, the technical
rules of evidence; and while, no doubt, it is the duty of the
prosecutor to give them such aid as he may in that respect,
he has no control over them.  As a matter of fact, under the
common law, and in the State of Illinois, where the common
law prevails, grand jurors are entitled to indict upon their
personal knowledge, and upon their experience as men of
affairs, upon what has transpired in the community with
reference to the case under their investigation.  They cannot
be expected to know what evidence is or is not legally com-
petent.  If, therefore, indictments are to be quashed because
incompetent evidence was heard by the grand jury, the return
of a true bill practically will become an impossibility."

See *People* v. *Lauder,* 82 Mich. 109; *State* v. *Tucker,* 20
Iowa, 508; *Hope* v. *People,* 83 N. Y. 418; *State* v. *Dayton,*
23 N. J. L. 49; *State* v. *Logan,* 1 Nev. 509.

The second objection presents the ruling of the court in overruling the traverser's exceptions to the answer of the State to the motion to quash the indictment. There was no error in this ruling.

The constitutional rights of the traverser were not violated or invaded by reason of her testimony before the grand jury, as stated and set forth in the State's answer to the motion to quash.

The authorities are uniform, to the effect that voluntary testimony of the accused before a grand jury is no ground for quashing an indictment.

In *People* v. *King,* 28 Cal. 272, it is said: "So far as the motion (to quash) was based upon the ground that the defendant had testified against himself before the grand jury is concerned, it is only necessary to say that we know of no rule of law which made it illegal for him to testify if he felt inclined to do so, nor do we know of any rule of law which makes the voluntary testimony of the defendant before the grand jury a ground for setting aside the indictment."

In *People* v. *Lauder,* 82 Mich. 119, the Supreme Court of that state said, "And, first, it may be premised that being subpoenaed and appearing before the grand jury was not a violation of his constitutional right, nor being sworn before that body, nor testifying upon any matter that did not criminate himself. All these the law compelled him to do under pains and penalties. But the law did not compel him to give testimony that would criminate himself. The fundamental law expressly declared that he should not be compelled to do so. It was therefore a personal privilege, and Mr. Lauder could claim it or not as he chose. If he gave such criminating testimony voluntarily, it is doubtful if it could be used against him upon the trial. If it was not voluntarily given, it could not be used against him upon the trial. In all cases where a personal privilege exists for a witness to testify or not, if such witness does testify without objection he will be deemed to have done so voluntarily."

Nor do we find any reversible error in the ruling of the court in overruling the demurrer to the indictment. No reason in support of the demurrer is stated, and it appears to be in the approved form.

With regard to the sentences but little need be said, because the court had power to impose them under Code (volume 4), art. 27, sec. 654. This section provides: "When any person is convicted, before any circuit court of any county, or the Criminal Court of Baltimore, of any crime, committed after this act takes effect, and punishable by any imprisonment whatsoever or by fine and imprisonment (other than imprisonment in default of fine), said court may, in its discretion, sentence such person to imprisonment in jail or in the Maryland House of Correction or in the Maryland Penitentiary."

Many authorities from other states and the federal courts have been cited in the appellant's brief and have been examined by us. They will be found to announce certain general principles, which may be conceded to be correct, but are not controlling on the facts disclosed by the record in this case.

Finding no reversible error in any of the rulings of the Criminal Court of Baltimore City, the judgments appealed from will be affirmed.

*Judgment affirmed, appellant to pay the costs in this Court and in the court below.*