STATE *v.* COMES

[No. 112, September Term, 1964.]

272

*Decided January 7, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and OPPENHEIMER, JJ.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Frank H. Newell, III, State's Attorney* and *Austin W. Brizendine, Assistant State's Attorney,* respectively, *for Baltimore County,* on the brief, for appellant.

*Douglas N. Sharretts* for appellee.

PRESCOTT, C. J., delivered the opinion of the Court.

This appeal presents some unusual aspects different from the general run of criminal cases, and the proper solution thereof is not entirely free of difficulty. This is because of the consti-

tutional and statutory provisions (set forth below) relating to bribery, the acceptance of bribes, and the granting of an exemption from prosecution to those who are compelled to testify.

The appeal has been ably briefed and argued by counsel on both sides.

The grand jury for Baltimore County was investigating possible crimes or violations of law in the delivery and sale of bituminous material in and to Baltimore County, and it, in due course, returned indictments charging bribery and the acceptance of bribes against various individuals under Article 27, § 23. Nine such indictments were brought against the appellee-defendant.

During the investigation, the grand jury called upon the appellee to testify before it on two separate occasions: once on June 8, 1962, and again on June 12, 1962. No formal summons was issued to him on either occasion, although a witness slip entitling him to a witness fee was given him after his first appearance. At no time was he formally offered the immunity named in the statute quoted below, nor did he, at any time before testifying, formally claim such immunity. The appellee, a road superintendent employed by Baltimore County, appeared before the grand jury on both dates in response to radioed instructions from the dispatcher's office of his employer to him "out in the field." The dispatcher received his order to call the appellee from the Assistant State's Attorney, who, in turn, had been directed by the grand jury to secure the appellee's attendance on both occasions. As a result of appellee's own testimony, the grand jury indicted him in the nine cases charging violations of the bribery laws. The trial judge, upon appellee's motion, dismissed all nine indictments.

In compliance with the mandate contained in Section 50 of Article III of the Constitution of Maryland, the Legislature enacted Code (1957), Article 27, Section 23. It provides for the punishment of any person bribing or attempting to bribe public officials, including any employee of a county, and for the punishment of any such employee who demands or accepts a bribe, fee, reward or testimonial for the purpose of influencing him in the performance of, or in the failure to perform, his official duties. The above Section then continues:

"and any person so bribing or attempting to bribe or so demanding or receiving a bribe shall be a competent witness, and *compellable* to testify against any person or persons who may have committed any of the aforesaid offenses; provided, that any person so compelled to testify in behalf of the State in any such case shall be *exempt from prosecution, trial and punishment* for any such crime of which such person so testifying may have been guilty or a participant therein and about which he was *so compelled* to testify." (Italics added.)

We held in *Brown v. State,* 233 Md. 288 (opinion by Brune, C. J.), that the exemptions mentioned in the above Section extended to proceedings before grand juries.[1]

Upon the facts and the law as we have set them forth above, the State earnestly argues with considerable force that the appellee was not "compelled" to testify, because he was not formally summoned (as in *Brown, supra*), and, therefore, he could have ignored, with impunity, the radio call directing him to appear before the grand jury. In addition, says the State, he failed to assert or claim his immunity at the time he appeared and testified before the grand jury; hence, his said appearance and testimony given were purely "voluntary" and in no sense "compelled," so that he may not now invoke the provisions of Section 23 for his protection. The State further contends that even though a refusal to appear and testify by the appellee might have been followed by a formal summons and a direction by the grand jury to testify "takes nothing away from the fact that he voluntarily appeared before the grand jury pursuant to an informal invitation."

The State relies principally upon two previous cases decided by this Court: *Pick v. State,* 143 Md. 192, and *Gamble v. State,* 164 Md. 50. However, we do not find either of them particularly helpful in determining the questions involved herein. In

---

1. We examined and analysed many cases, including a number from the Supreme Court of the United States, in this opinion; hence, it will not be necessary to discuss, elaborately, the same cases herein.

*Pick,* four indictments charging larceny were involved; in *Gamble,* the appellant was charged with an aggravated assault. Both appellants appeared before the grand juries which indicted them. Neither declined to testify. This Court held that their appearances before the grand juries and their testifying, voluntarily, did not invalidate the indictments, noting in *Gamble*: "They [the defendants] might have been compelled to obey the summons, but no power could compel them, against their will, to give evidence which might result in their indictment for the offense then being investigated." (In the case at bar, the Statute made the appellee a compellable witness.) See also *Vajtauer v. Comm'r,* 273 U. S. 103, wherein it was stated that one who does not assert his constitutional privilege against self-incrimination waives it. But in none of these cases was an immunity statute involved; the appellants relied solely upon constitutional provisions that no man ought to be compelled to give evidence against himself in a criminal case. Fifth Amendment to U. S. Constitution; Article 22 Md. Declaration of Rights.

Over the years, innumerable so called "immunity" statutes have been enacted throughout this country. For a rather complete compilation thereof, federal and state, see VIII *Wigmore, Evidence* (McNaughton Rev.), § 2281, n. 11. Few, if any, of them are couched in identical language. Many explicitly require, as a prerequisite to the grant of immunity, that the privilege be claimed (see, for example, Code [1957], Article 95 A. Section 12, "* * * which he is compelled, after having claimed his privilege against self-incrimination * * *."), or that the witness be ordered to answer by a court. Others require that the compelled testimony be given under oath. For a statute of this nature, see Code (1957), Article 48 A, Section 28. There are numerous other variations to be found in the statutes, but it will not be necessary to state them in further detail.

Professor Wigmore, *op. cit.* in § 2281, pertinently calls attention to the fact that the improper use of "immunity" and "privilege" as interchangeable terms has rendered some judicial opinions needlessly obscure. He points out that "immunity" signifies the beneficial result to the offender, *i.e.,* the nonliability of the offender for the offense itself, while "privilege" denotes the noncompellability to speak about the offense. In

other words, by an immunity the offender's guilt ceases; under a privilege, it continues.

Professor Wigmore, *op. cit.*, beginning with § 2281, deals with immunity statutes with his characteristic thoroughness and ability. However, Professor McCormick in McCormick, *Evidence,* § 135 analyzes the cases and summarizes the holdings in a manner sufficient for the purposes of this case. He states:

> "Immunity statutes have as their purpose not a gift of amnesty but the securing of testimony which because of privilege could not otherwise be procured. If the witness is willing to give the evidence voluntarily, there is no reason for buying it with immunity. But the traditional language of early immunity statutes did not make clear the conditions of exchange. They merely provided that in certain proceedings the privilege did not exist, but the witness had an immunity. This vagueness has provoked disputes. Must the witness have been compelled by subpena to appear? Not unless the immunity statute so provides, but the subpena is some evidence that the testimony was compulsory. Must the witness claim his privilege not to answer? Many modern statutes explicitly so provide, but in the absence of such provision, there is conflict. The highest court holds such claim is not required, on the ground that to deny the immunity, when the literal words of the law confer it, makes the statute a trap for the witness. [The author here cites *United States v. Monia,* 317 U. S. 424, which will be dealt with below. See also *Adams v. Maryland,* 347 U. S. 179.] The dissenting view, for which there is strong support in state holdings, is that the witness in the absence of the immunity statute would be required to claim the privilege or lose it, and there is no reason to believe that the statute was intended to change this. This being so, why endow with immunity one who has waived the privilege to be silent? Moreover, the requirement of a claim, and consequent ruling, lessens the danger that immunity will be conferred

by inadvertence of government counsel, unaware that his question touches upon a criminal transaction of the witness.

"Under this, which seems the more expedient view, the counsel for the government, would have the opportunity to yield to the privilege, or to insist upon the question and invoke the judge's ruling requiring the witness to answer, in return for the immunity. If the evidence given is not within the scope of the privilege, as where required records are called for, there is no basis for granting the compensatory immunity. Similarly, even though the witness claims the privilege, if his testimony does not disclose any facts which could by reasonable possibility constitute evidence of crime, there is no *quid pro quo* of incriminating evidence to exchange for immunity.

"Many of the difficulties and miscarriages in the application of the immunity statutes would disappear if Congress and the several state legislatures would displace the present scattered and piecemeal enactments by a well-planned and comprehensive Immunity Act."

It may not be out of place to restate here the questions to be determined, thereby bringing them into sharper focus. They are: (1) Is a subpoena an indispensable factor in compelling a witness to testify?; and (2), Under the statute here involved, must a witness claim his privilege in order to obtain the exemption afforded by the statute?

I

The first question gives us little difficulty. The State, as pointed out above, claims that appellee's appearance was purely "voluntary." The Oxford English Dictionary, Vol. 12, describes "voluntarily" as being "of one's own free will and accord; without compulsion, constraint or under influence by others; freely, willingly." [2] We are unable to conclude that the

---

2. The dictionary gives a subtle quotation from "Women's Saints," c.1610 as an example of a non-voluntary act:
   "To these marriages, albeit with a king, she was rather haled perforce than voluntarilie assenting."

appellee was acting freely and willingly after he received the radio call to report to the grand jury, which he immediately did.

Many lengthy and able opinions have been written dealing with the compulsoriness or the voluntariness of the disclosure made. However, we see no necessity for laboring this question unduly. The following is, we think, a short but complete answer thereto. Every person is presumed to know the law; hence, the appellee, once he got before the grand jury whether by subpoena or otherwise, presumptively knew that he was subject to contempt proceedings and imprisonment, if he refused to answer questions relative to the bribery laws. *Brown v. State, supra.* As we stated in *Sullivan v. Sullivan,* 234 Md. 67 (a divorce case) :

> "Acquiescence to or assent to what one cannot prevent does not amount to a voluntary agreement thereto."

We think that Professor McCormick's answer to the question, as quoted above, is supported by the authorities, and hold that appellee did not appear before the grand jury voluntarily. See also 38 A.L.R. 2d 257, 300; VIII *Wigmore, op. cit.,* § 2282, p. 514.

## II

This brings us to the second question. Both Professors Wigmore and McCormick lean toward a requirement that the privilege be claimed if immunity is to be obtained. In note 11, § 2282 of VIII *Wigmore, op. cit.,* are listed some ten states as requiring a claim of privilege (nearly all of the cases here cited were decided before *Monia* and *Adams, supra* and *infra*), and seven states as not requiring the same. And there was serious conflict on the question under consideration in the decisions of the lower Federal courts before *Monia.* For the main part, the decisions which hold that the privilege must be claimed assign as the reasons for so holding those stated by McCormick in the quotation above; and those that hold to the contrary usually give as their reasons for so holding those named in *Monia,* which we will now discuss.

In *Monia* (opinion by Mister Justice Roberts), the question involved was as stated by the Court: "* * * whether one who in obedience to a subpoena [this was made a prerequisite by the Act of June 30, 1906, 34 Stat. 798, 15 U. S. C. 33] appears before a grand jury inquiring into an alleged violation of the Sherman Act [32 Stat. 854, 904, 15 U. S. C. 32], and gives testimony under oath substantially touching the alleged offense, obtains immunity from prosecution for that offense, pursuant to the terms of the Sherman Act, although he does not claim his privilege against self-incrimination." [3]

The appellees were indicted for conspiracy to fix prices in violation of the Sherman Act. They filed special pleas setting forth that they, in obedience to subpoenas, had appeared as witnesses for the United States before a grand jury inquiring respecting the matters charged in the indictment and had given testimony substantially connected with the transaction covered by the indictment. The Government demurred to the pleas as insufficient, "since neither alleged that the witness asserted any claim of privilege * * * and therefore neither the Fifth Amendment of the Constitution nor the immunity statute could avail him." The District Court overruled the demurrers on the ground that the appellees were immune from prosecution "whether they had claimed the privilege or not," and the Supreme Court affirmed.

Beginning at page 426 of 317 U. S., Justice Roberts sets forth the arguments advanced for sustaining the demurrers, and gives the reasons for the Court's rejection thereof. He first points out that the statute there involved did not expressly provide that the privilege must be claimed for immunity to be obtained [and the statute involved in the case at bar contains no such provision] ; and states the Court was being asked to

---

3. The Sherman Act, in part, provided that no natural person who, in obedience to a subpoena, gives testimony under oath or produces evidence, documentary or otherwise, under oath "Shall be prosecuted or be subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing concerning which he may testify or produce evidence * * * in any proceeding, suit, or prosecution under said Acts [the Interstate Commerce Act, the Sherman Antitrust Act, and other acts] * * *."

read into the statute "a qualification to the effect that immunity is not obtained unless the privilege against self-incrimination is claimed [which is exactly what we are now requested to do]." He then reviews the legislative history of the immunity statute there involved and others, and answers fully and satisfactorily, we think, all of the arguments advanced in the cases decided to the contrary. Briefly stated, the arguments ran as follows: that inasmuch as the statute was addressed to the privilege accorded by the Fifth Amendment and the immunity granted by the statute was offered as a substitute for the privilege, the immunity, like the privilege, ought to be required to be claimed, thereby giving the statute and the Fifth Amendment a consistent construction; that if the statute were given a construction as not requiring a claim of privilege, the prosecutor would be placed at a disadvantage, since he does not know, or to what extent, that a witness may have participated in a crime, and therefore he would be required to run the risk of unintentionally affording immunity, while the witness has full knowledge of his past conduct, so it would not be unfair to require him to claim his privilege, thereby alerting the prosecution.

In rejecting these contentions, the Court pointed out that the Fifth Amendment speaks of compulsion, but it does preclude a witness from testifying, voluntarily, relative to matters which may incriminate him; hence, if he wants the privilege, he must claim it. It also pointed out that more than 70 years prior to its decision, Congress had been advised that in suits prosecuted by the United States, where evidence had been sought from certain persons, they had interposed a claim of privilege which had been upheld by the courts. The opinion then states:

> "In order to forestall the obstruction and delay incident to judicial determination of the validity of the witness's claim, and in order to obtain necessary evidence, even though the claim were well founded, Congress adopted the Act of February 25, 1868 * * *."

This Act was later declared unconstitutional in *Counselman v. Hitchcock,* 142 U. S. 547 (a decision criticized by both Wigmore and McCormick). The Court then traces the history of

the Act then under consideration and points out that Congress, by some of the earlier Acts, had opened the door to a practice whereby the Government might be trapped into conferring unintended immunity to witnesses volunteering to testify. The Court concluded that subsequent provisions requiring that the witness' attendance be obtained by subpoena and the witness be sworn were considered, by Congress, to be sufficient to protect the Government's interest against providing immunity unwittingly. The Court also observed that the statute, if interpreted as the Government suggested, might well be a trap for the witness, and concluded that Congress evidently intended to afford Government officials the choice of subpoenaing a witness and putting him under oath, with the knowledge that he would have complete immunity from prosecution respecting any matter substantially connected with the transactions in respect of which he testified, or retaining the right to prosecute by foregoing the opportunity to examine him. Towards the end of the opinion, Justice Roberts states that between 1934 and 1940 Congress had enacted a series of acts, which explicitly require that if a witness desires immunity he must, in addition to other requirements, assert his constitutional privilege. He, cogently, adds: "These acts indicate how simple it would have been to add a similar provision applicable" to the act involved. The same may be said of the statute being considered in the instant case.

A similar ruling was made in *Adams v. Maryland, supra,* wherein the Supreme Court again rejected the argument that a witness, who failed to assert his constitutional privilege against self-incrimination, had lost the statutory immunity afforded by 18 U. S. C. § 3486.

In the instant case, as in *Monia,* the statute is of rather early "vintage." It has now been over 20 years since *Monia* was decided and some 11 years since the *Adams* decision; yet the Legislature has not seen fit to place a provision in Article 27, Section 23, to the effect that a witness must claim his constitutional privilege in order to obtain the protection of the statute. There is no doubt that the appellee testified and disclosed facts which were "substantially connected" with the crimes for which he was indicted; hence the immunity afforded was not a gift, as the State received its *"quid pro quo"* for the same. Without pro-

longing this opinion further, we think the reasons assigned by Justice Roberts are persuasive, and, therefore, hold that the trial court was correct in dismissing the indictments. As this Court stated in *Allen v. State*, 183 Md. 603, 607: "The principle [against self-incrimination] has always been liberally construed in order to give the fullest effect to this immunity, and the protection thus afforded adheres to the accused throughout his trial."

In making this ruling, we are not to be understood as intimating that no witness, who appears before a grand jury and testifies, may not do so "voluntarily." Instances have been known where witnesses, either by subterfuge (such as a witness using another witness' subpoena), collusion, or otherwise, have appeared before grand juries and testified for the specific purpose of attempting to obtain immunity. No such question is raised herein (and we leave all questions of this nature open); the appellee, in good faith, responded to the radio call to appear before the grand jury, was sworn, and testified under oath.

> *Order dismissing the indictments affirmed; Baltimore County to pay the costs.*