## STATE OF MARYLAND *v.* GEORGE J. PANAGOULIS

[No. 127, September Term, 1967.]

---

*Decided March 12, 1968.*

The cause was argued before ANDERSON, MORTON, ORTH, and THOMPSON, JJ., and CHILDS, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Frank A. DeCosta, Jr., Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Vincent J. Femia, Assistant State's Attorney for Prince George's County,* on the brief, for appellant.

*Jerrold V. Powers,* with whom was *Edward J. Bagley* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On February 6, 1967 two indictments were returned against the appellee charging that he bribed and conspired to bribe a member of a municipal corporation of this State. He moved to dismiss the indictments and, after hearing, the motions were

granted by the Circuit Court for Prince George's County, the court finding that the appellee was immune from prosecution. The State appealed.

Evidence was adduced at the hearing to show that a "congressional candidate" had presented information to the grand jury of Prince George's County concerning alleged irregularities in zoning matters and that among those persons alleged to be "involved" was the appellee. In a newspaper article admitted in evidence it was stated that the State's Attorney said that "every name" given by the informant would be questioned by the grand jury. The appellee testified that he was aware of this. He said that on November 3, 1966, Vincent J. Femia, then an Assistant State's Attorney for Prince George's County, called him about making a statement to the State Police investigators. Later that day, about 11:30 P.M., Femia again called the appellee, who, as a result of the call, went to the Seat Pleasant Station, arriving there about midnight. Femia and two State Police corporals were present. He was interrogated "on matters pertaining to these zoning irregularities" for about two and one-half hours. At the conclusion of the interrogation the appellee asked Femia "if it would be necessary for me to appear before the Grand Jury since I had already given this testimony to the police officers, and he answered yes * * * I then asked him when and he said, 'this morning.' " The appellee called Femia about 9:15 A.M. on November 4th, and Femia asked him to "come down." He met Femia at the police office and they went to the grand jury room by way of the "back door" to avoid publicity.[1] The appellee testified before the grand jury on the zoning matters. A transcript of a part of the proceedings before the grand jury was read into evidence. It showed that the appellee was sworn and requested that he be permitted to make an opening statement. His remarks were transcribed as follows

"May I say that at the outset I wish to express my sincere appreciation to the staff of the State's Attor-

---

1. According to the clerk charged with the ministerial duty of scheduling and arranging for the appearance of witnesses before the grand jury, the name of the appellee was not on her list of witnesses for November 4, 1966 and she did not know that he was to appear that day.

ney's Office—excuse me—the staff of the State's Attorney, Mr. Marshall, Mr. Femia, and to the members and foreman of the Grand Jury for affording me this opportunity to appear before you this morning to clarify any allegations that may have been made concerning me in the past several weeks. I previously had instructed my accountant to make all his records available to you. I gave your investigators a very comprehensive statement as early as this morning and turned over any records that I had to them for any verification of any facts, and I shall try to answer any questions that may be propounded to me as truthfully and as conscientiously as I possibly can."

At the hearing in the instant case the appellee testified that he had appeared before grand juries at least twice a year since 1955 and always made an introductory statement similar to the one he made on November 4th.

Femia's testimony confirmed the circumstances surrounding the interrogation of the appellee in the early morning hours of November 4th. His recollection was that the appellee said upon the conclusion of the interrogation, "Would it help if I appeared before the Grand Jury?" Before receiving a reply, the appellee changed the question to "Would it help the Grand Jury if I appeared before the Grand Jury?" Femia replied, "Well, to tell you the truth, George, from what I heard tonight it sure can't hurt you and it has to help them, any information they can get." He denied telling the appellee that it was necessary for the appellee to appear before the grand jury and did not recall the appellee asking if it was necessary for him to go before that body. "But I do know this, that at no time did I indicate that he had to testify. At no time did I indicate this to him. Now, I have been a prosecutor long enough to know that if a man stands accused of anything the last place you take him is in the Grand Jury room. That sort of puts you out of business." The Court said to Femia, "As I understood a while ago (the appellee) didn't in so many words say, "I want to go before the Grand Jury," and Femia replied, "that is correct, not to me anyway."

Each of the State Police officers present during the interrogation of the appellee had some recollection of the conversation between Femia and the appellee about the grand jury. Neither could recall the exact words. One said that the appellee "said something to the effect that he wanted to appear and get this whole mess straightened out." The other stated he heard the appellee saying that "he was anxious to clear this matter up, that he wanted to do anything possible to clear the matter up, and that he was — wanted to know if he could help the Grand Jury in any way by testifying, and that he was anxious to testify before the Grand Jury if that would help in any way clear it up."

Arthur A. Marshall, Jr., the State's Attorney for Prince George's County, testified that during the investigation the appellee offered "to turn over all his books and records, I think he did, and income tax statements. I believe he has done that. He offered to meet with these State Police investigators, and I do know offered to do anything that was possible to bring this to a conclusion." Between October 25, 1966 and November 4, 1966 during a telephone conversation between Marshall and the appellee, the appellee asked "* * * if there was anything he could do, and he offered to come before the Grand Jury or do anything further that he could possibly do to cooperate. I think his words would have been something to the effect like, 'Would it help to come before the Grand Jury, would it satisfy them,' and I think my response would have been something like, 'It certainly wouldn't hurt you.'" Marshall said he never directed the appellee to appear before the grand jury, did not issue a summons for him to appear and did not, either by letter or orally, direct his appearance.

It is clear that the appellee appeared before the grand jury of Prince George's County on November 4, 1966 and testified. We think, and it is not contended to the contrary, that his testimony was with regard to the investigation by the grand jury of zoning matters, and that the indictments returned against him were a result of that investigation. The question is whether the appellee was exempt from prosecu-

tion, trial and punishment because he appeared before the grand jury and so testified.[2]

On March 30, 1868 the General Assembly approved Chapter 369 of the Acts of 1868, enacted in compliance with the requirements of Article 3, § 50 of the Constitution of Maryland of 1867. As now codified, with amendments, in Md. Code (1967 Repl. Vol.), Art. 27, § 23, it proscribes, in part here relevant, bribing public officials, including a member of any municipal corporation of this State, and the demand or receipt of a bribe by such officials. The section continues:

> "and any person so bribing * * * or so demanding or receiving a bribe shall be a competent witness, and compellable to testify against any person or persons who may have committed any of the aforesaid offenses; provided, that any person so compelled to testify in behalf of the State in any such case shall be exempt from prosecution, trial and punishment for any such crime of which such person so testifying may have been guilty or a participant therein, and about which he was so compelled to testify." [3]

The exemptions in § 23 extend to proceedings before grand

---

2. Within the context of the question, we consider the phrase "exempt from prosecution, trial and punishment" to be synonymous with the word "immunity" and use them interchangeably in this opinion.

3. The immunity granted by the statute is a broad one. "It effectively bars the use of 'leads' to convict the witness of the offense as to which he testifies, and it covers the offense of attempting to bribe as well as actual bribing. We further think that the broad language referring to 'any such crime of which' he 'may have been guilty' may fairly be construed and should be construed as including conspiracy to violate the bribery law; but even if it were not, this gap in statutory protection would be closed by Section 39 of Article 27." *Brown v. State*, 233 Md. 288, 297-298.

Code, Art. 27, § 39 provides for immunity to like effect with regard to conspiring to commit the offenses set forth in § 23, (and also subtitles "Gaming" and "Lotteries"). *Brown*, note 2 at p. 294, lists other statutes in this State dealing with compellability of testimony and grant of immunity, noting that the language is not uniform.

juries. *Brown v. State,* 233 Md. 288. In resolving the question, therefore, it must be determined whether the appellee was compelled to testify, and, if so, whether, under the circumstances present, he obtained immunity. We think that *State v. Comes,* 237 Md. 271, is controlling.

## THE COMPULSION OF THE WITNESS

In *State v. Comes, supra,* the Court had before it whether a subpoena was an indispensable factor in compelling a witness to testify under the statute. It said, p. 278:

> "Many lengthy and able opinions have been written dealing with the compulsoriness or the voluntariness of the disclosure made. However, we see no necessity for laboring this question unduly. The following is, we think, a short but complete answer thereto. Every person is presumed to know the law; hence, the appellee, once he got before the grand jury whether by subpoena or otherwise, presumptively knew that he was subject to contempt proceedings and imprisonment, if he refused to answer questions relative to the bribery laws. *Brown v. State, supra.* As we stated in *Sullivan v. Sullivan,* 234 Md. 67 (a divorce case):
>
> 'Acquiescence to or assent to what one cannot prevent does not amount to a voluntary agreement thereto.' " [4]

We must take this language to mean what it clearly says. Therefore, with regard to the question of a witness being compelled to testify, it is immaterial how he got before the grand jury.[5] Once he is there, is sworn and testifies, he has been

---

4. In *Comes* the appellee was not subpoenaed but appeared before the grand jury and testified after receiving a radio call from the dispatcher's office of his employer. The dispatcher received his order to call the appellee from the Assistant State's Attorney, who in turn, had been directed by the grand jury to secure the appellee's attendance. The Court held that the appellee did not appear before the grand jury voluntarily.

5. Although not material to his compellability, the circumstances of his appearance may be material to a determination of whether he waived immunity as hereinafter discussed.

compelled to testify within the meaning of the statute. We hold that the appellee was "compelled to testify in behalf of the State."

## THE IMMUNITY OF THE WITNESS

It does not necessarily follow, however, that although a person is compelled to testify within the meaning of the statute by the fact of the grand jury receiving his testimony relevant to the matter before it, that such person is always exempt from prosecution on such matters.

Both Article 22 of the Maryland Declaration of Rights and the Fifth Amendment to the Constitution of the United States provide, although in slightly different language, that no person shall be compelled to give evidence against himself in a criminal case. In *Malloy v. Hogan,* 378 U. S. 1, the Supreme Court held that the protection of the federal constitution's privilege against self-incrimination flowed to the states through the Fourteenth Amendment. But even before the decision in that case, the Court of Appeals of this State, in *Brown v. State, supra,* held that the two constitutional provisions against self-incrimination were in *pari materia* and should receive a like construction.[6] The statute, here under consideration, by its express terms, not only makes a person a competent witness in bribery cases, but compels him to testify. It thus takes away his constitutional privilege against self-incrimination when he is compelled so to testify and grants him an immunity from prosecution, trial and punishment in place of the privilege. Such a statute is valid if its effect is to grant protection as broad as that afforded by the privilege which it displaces. Art. 27, § 23 has been held to afford such protection. *Brown v. State, supra,* p. 297. "Immunity" and "privilege" are therefore not interchangeable terms and it is necessary to distinguish between them. *Wigmore, Evidence* (McNaughton Rev.) Vol. VIII, § 2281 "points out that 'immunity' signifies the beneficial result to the offender, i.e., the nonliability of the offender for the offense itself, while 'privilege' denotes the non-

---

6. *Malloy v. Hogan* was decided June 15, 1964 and *Brown v. State* was decided January 13, 1964.

compellability to speak about the offense. In other words, by an immunity the offender's guilt ceases; under a privilege it continues." *State v. Comes, supra,* pages 275-276. It is within such frame of reference that the holdings in *Comes* come in focus. *Comes* held that under the statute here involved it was not necessary that a witness claim his privilege against self-incrimination in order to obtain the exemption afforded by the statute.[7] We think it obvious that as the statute takes away the privilege, the witness cannot lose the immunity granted by the statute by failing to assert a privilege not available to him. The Court concluded its opinion in *State v. Comes, supra,* by saying, p, 282:

> "In making this ruling, we are not to be understood as intimating that no witness, who appears before a grand jury and testifies, may not do so 'voluntarily'. Instances have been known where witnesses, either by subterfuge (such as a witness using another witness' subpoena), collusion, or otherwise have appeared before grand juries and testified for the specific purpose of attempting to obtain immunity. No such question is raised herein (and we leave all questions of this nature open) ; the appellee, in good faith, responded to the radio call to appear before the grand jury, was sworn, and testified under oath."

Although the Court in making the statement referred to the appearance of a witness "voluntarily", we think it clear from the opinion that it was not then considering the question of the compellability of a witness but the question of immunity afforded him; the appearance of a witness before a grand jury for the specific purpose of attempting to obtain immunity under the circumstances set forth by the Court would result

---

7. Absent a statute compelling a witness to testify and granting him immunity if so compelled, if he wants the privilege he must claim it. Neither the State nor the federal constitutional provision precludes a witness from testifying, voluntarily, relative to matters which may incriminate him. See *United States v. Monia,* 317 U. S. 424; *Gamble v. State,* 164 Md. 50.

in a waiver, by reason of his conduct, of the immunity to which he would be otherwise entitled. We note that the Court referred to instances where witnesses appeared before grand juries "by subterfuge * * *, collusion, *or otherwise*", (emphasis added) and testified for the specific purpose of attempting to obtain immunity. We think, therefore, that there may be instances other than "subterfuge" and "collusion" whereby a witness waives his immunity. Even a constitutional right may be waived. *Cohen v. State,* 235 Md. 62, 70, cert. den. 379 U. S. 844; *Goetzke v. Warden,* 1 Md. App. 3, 7 and cases therein cited. We feel that a witness may waive his immunity, expressly or by his conduct.

The appellee did not expressly waive immunity from prosecution with respect to his appearance on November 4th.[8] The lower court found as a fact that there was "no such * * * 'subterfuge, collusion' or the like to get in the grand jury room for the sole purpose of obtaining immunity" and from the record before us, we agree. We also think that there were no other circumstances shown sufficient to establish that the appellee otherwise waived immunity by his conduct. That he may have hoped to convince the grand jury that he was in no way culpable and so prevent an indictment from being returned against him or that, in the words of the lower court, "his hope in going before the grand jury was to help him-

---

**8.** The Court asked Femia why a written waiver was not obtained and in explanation Femia said:

"Sir, very simply, we - - - he asked us, we didn't ask him. And, Judge, remember, he is the Chief of Police. The man asked us to come and testify before the Grand Jury. To have this man sign a written waiver - - - you are asking me why, I am telling you why - - - in my opinion it would have been quite embarrassing. The man is a friend of all of us and had been * * * I can't assign any particular reason, Your Honor, except that it was by his request that he was going in there."

Femia also agreed, however, as hereinbefore noted, that the appellee did not say to him, in so many words, "I want to go before the Grand Jury." We note that the appellee also appeared before the grand jury at a time subsequent to November 4, 1966. At his subsequent appearance he signed a waiver of immunity.

self," are not sufficient to constitute a constructive waiver of immunity. Nor may he be denied the immunity because he in fact knew or was presumed to know the law and was thus aware that if he testified under the circumstances here present, he would be exempt from prosecution. The grand jury and the prosecuting authorities are also presumed to know the law, and when the appellee was permitted to testify without an express waiver of immunity by him, he was then, under the circumstances existing, in the absence of conduct on his part sufficient to constitute a waiver, exempt from prosecution, trial and punishment. The lower court did not err in granting the motions to dismiss the indictments.

> *Order dismissing the indictments affirmed; county commissioners of Prince George's County to pay costs.*