STATE OF MARYLAND *v.* WILLIAM FEARING,
ALBERT HERRMANN, STEPHEN LAI, JOHN
DUER MOORES, JONAS COHEN,
HUMBERTO CERTEZA AND
MELVIN F. POLEK

[No. 121, September Term, 1975.]

*Decided January 30, 1976.*

The cause was argued before MOYLAN, MENCHINE and LOWE, JJ.

*Albert Gallatin Warfield, III, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City,* and *Richard Cremin, Assistant State's Attorney for Baltimore City* on the brief, for appellant.

*Alan I. Baron* for appellee Jonas Cohen. *Read K. McCaffrey,* with whom were *George D. Solter* and *Whiteford, Taylor, Preston, Trimble & Johnson* on the brief, for appellee John Duer Moores. *Russell Smouse* for appellee

Stephen Lai. Submitted on brief by *Edwin M. Henry, Jr.* and *Preston A. Pairo, Jr.*, for appellee William Fearing. *George J. Helinski* for appellee Melvin F. Polek. *Peter G. Angelos* for appellee Humberto Certeza. *Alvin Solomon* and *Victor W. Fuentealba* for appellee Albert Herrmann.

MOYLAN, J., delivered the opinion of the Court.

This case involves an interpretation of the Controlled Dangerous Substances Act, which was modeled on and taken virtually verbatim from the proposed draft of the Federal Controlled Substances Act [1] and made a part of Maryland law by virtue of Chapter 403 of the Acts of 1970, which became effective on July 1, 1970. The appellees William Fearing, Albert Herrmann, Stephen Lai, John Duer Moores, Jonas Cohen, Humberto Certeza and Melvin F. Polek, are all medical doctors licensed to practice in the State of Maryland. On July 26, 1974, the Grand Jury of Baltimore City returned numerous multi-count indictments against the appellees charging them with violations of the Controlled Dangerous Substances Act. All of the appellees moved to have the indictments dismissed and, after full hearings on the motions on December 3, 1974, the indictments were dismissed in the Criminal Court of Baltimore on December 27, 1974.

Pursuant to *Courts and Judicial Proceedings Article*, § 12-302 (c), and *State v. James*, 203 Md. 113, 100 A. 2d 12, the State has taken a timely appeal.

I.

Of the 35 indictments involved in the dismissal hearing, five were single-count indictments charging the appellees Moores, Fearing, Cohen, Herrmann and Certeza with conspiracy to violate § 286 (a) (1). Each of the remaining 30 indictments was in seven counts, with the first, second, fifth and sixth counts charging substantive violations of § 286 (a) (1). All of these substantive counts, as well as all of the

---

1. Ultimately enacted on October 27, 1970.

conspiracy indictments, were dismissed because of the hearing judge's conclusion that § 286 (a) (1) does not apply to medical practitioners.

Section 286 (a) (1) provides:

"(a) Except as authorized by this subheading, it shall be unlawful for any person:

(1) To manufacture, distribute, or dispense, or to possess a controlled dangerous substance in sufficient quantity to reasonably indicate under all circumstances an intent to manufacture, distribute, or dispense, a controlled dangerous substance;"

The thrust of the judge's ruling and of the appellees' argument both here and below was that since § 288 dealt with "certain unlawful acts particularly applicable to registrants" (that is, licensed medical practitioners), that section preempted the field so far as medical practitioners were concerned. That argument took the position that practitioners are exempt from the provisions of § 286, which apply to ordinary laymen, and may be proceeded against only under § 288. The contrary argument of the State is that § 286 applies to all who violate its general provisions, laymen and practitioners alike, and that § 288 applies additional proscriptions against medical practitioners.

The opinion of the hearing judge and the arguments of the appellees before us relied heavily upon the majority opinion of Chief Judge Bazelon in *United States v. Moore*, 505 F. 2d 426 (D. C. Cir. 1974). Interpreting counterpart provisions of the Federal Controlled Substances Act, the United States Court of Appeals ruled that a licensed physician could be proceeded against only under the specific provision of that Act dealing with licensed physicians. The State, both at the hearing below and before us, relied persuasively upon the dissenting opinion of Judge MacKinnon which argued vigorously that when physicians knowingly and unlawfully violate the general provisions of the criminal law, they are not exempted from the coverage of that law by virtue of their occupational status.

138

Since the decision of the hearing judge below and, indeed, since oral argument before us, the Supreme Court has stepped in and removed all ambiguity. In *United States v. Moore*, 18 Cr. L. 3025, decided on December 9, 1975 (the very case relied on below), a unanimous Supreme Court, speaking through Justice Powell, reversed the United States Court of Appeals for the District of Columbia and agreed with the dissenting opinion of Judge MacKinnon. The holding was very precise:

> "The United States Court of Appeals for the District of Columbia reversed the conviction of respondent, a licensed physician registered under the Act, on the ground that he was exempted from prosecution under § 841 [the counterpart provision to our § 286 (a) (1)] by virtue of his status as a registrant. We reverse and hold that registered physicians can be prosecuted under § 841 when their activities fall outside the usual course of professional practice."

After considering the argument in that case, which was framed in terms indistinguishable from the argument before us, the Supreme Court concluded:

> "But we think it immaterial whether Dr. Moore also could have been prosecuted for his violation of statutory provisions relating to dispensing procedures. There is nothing in the statutory scheme or the legislative history that justifies a conclusion that a registrant who may be prosecuted for the relatively minor offense of violating § 829 [the counterpart provision to our § 288] is thereby exempted from prosecution under § 841 for the significantly greater offense of acting as a drug 'pusher'."

We hold that the hearing judge was in error in dismissing the indictments and the counts charging conspiracy to violate and substantive violations of § 286 (a) (1).

## II.

The hearing judge dismissed the fourth and seventh counts of each of the multi-count indictments for a different reason. These counts dealt with the conduct of the physicians as physicians, charged violations of § 288 (c) dealing, *inter alia,* with unlawful prescribing of controlled dangerous substances, and were subject to the provisions of § 288 (b):

> "(b) Any person described hereinabove who violates this section is punishable by a civil fine of not more than Fifty Thousand Dollars ($50,000). Provided, that if the violation is prosecuted by an information or indictment which alleges that the violation was committed knowingly or intentionally, and the trier of facts specifically finds that the violation was committed knowingly or intentionally, such person shall be deemed guilty of a misdemeanor and punished by imprisonment, upon conviction, for not more than two (2) years or a fine of not more than One Hundred Thousand Dollars ($100,000) or both."

These counts did not allege that the violations were committed "knowingly or intentionally." By virtue of that fact and the clear direction of the statute, an adjudicated violator would not "be deemed guilty of a misdemeanor and punished by imprisonment . . . for not more than two (2) years or a fine of not more than One Hundred Thousand Dollars ($100,000) or both" but would be subject only to "*a civil fine* of not more than Fifty Thousand Dollars ($50,000)." (Emphasis supplied) The judge's ruling went further and concluded that in the absence of the allegation that the violations were committed "knowingly or intentionally," the violation was not even criminal in nature and should not have been a subject for grand jury indictment.

The Maryland law is singularly unenlightening and the phrase "a civil fine" would be annoyingly cryptic if we did not have the parent provisions of the Federal Act for

guidance. The Maryland Controlled Dangerous Substances Act does not spell out for us what is meant by the enigmatic reference to "a civil fine" sandwiched between criminal provisions; it does not make it clear whether one proceeds by the normal criminal processes but is simply limited to the lesser penalty; it gives no guidance as to the machinery for assessing or collecting such "a civil fine." Since the phrase "a civil fine" is taken from the Federal Act, however, we conclude that the Maryland Legislature meant the phrase to have whatever meaning it had in the parent Federal Act. We look, therefore, to 21 U.S.C., § 842, which makes explicit (in subsection (3)) that which in the Maryland law is hardly even implicit. Section 842 provides, in pertinent part:

"(c) (1) Except as provided in paragraph (2), any person who violates this section shall, with respect to any such violation, be subject to *a civil penalty* of not more than $25,000. The district courts of the United States ... shall have jurisdiction in accordance with section 1355 of Title 28 to enforce this paragraph.

(2) (A) If a violation of this section is prosecuted by an information or indictment which alleges that the violation was committed knowingly and the trier of fact specifically finds that the violation was so committed, such person shall, except as otherwise provided in subparagraph (B) of this paragraph, be sentenced to imprisonment of not more than one year or a fine of not more than $25,000, or both.

. . .

(3) *Except under the conditions specified in paragraph (2) of this subsection, a violation of this section does not constitute a crime, and a judgment for the United States and imposition of a civil penalty pursuant to paragraph (1) shall not give rise to any disability or legal disadvantage based on conviction for a criminal offense.*" (Emphasis supplied)

For further guidance as to how "a civil penalty" is treated under the Federal Act, we look to § 1355 of Title 28, referred to in § 842 above. That § 1355 provides, in pertinent part:

"The district courts shall have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress."

The Reviser's Note to this section points out that the word "fine" was inserted into this section dealing with civil provisions, despite its criminal connotations, because of "the many provisions in the United States Code for fines which are essentially civil." The Reviser's Note then makes further reference to § 2461, which provides, in pertinent part:

"(a) Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be re-covered in a civil action."

We conclude that proceeding by way of criminal indictment or information is appropriate under § 288 only when the violator is charged with having perpetrated the unlawful act "knowingly or intentionally" as provided by subsection (b). Other violations under § 288 without that necessary *mens rea* are not criminal in nature. The fourth and seventh counts of the multi-count indictments were, therefore, properly dismissed.[2]

---

**2.** We are not unaware of Article 38, § 1, which provides, in pertinent part:

"When any fine or penalty is imposed by any act of Assembly of this State . . . for the doing of any act forbidden to be done by such act of Assembly . . . the doing of such act . . . shall be deemed to be a criminal offense. Any such offense may be prosecuted by the arrest of the offender for such offense and by holding him to appear in or committing him for trial in the court which has jurisdiction in the said cases and shall proceed to try or dispose of the same in the same manner as other criminal cases may be tried or proceeded with or disposed of, or such offenses may be prosecuted by indictment in such court."

The 1972 amendment to this Act simply made formal changes of wording to accommodate the language to the creation of the District Court of

## III.

There remains but to consider the dismissals of the third counts of the multi-count indictments. Those counts charged violations of § 288 (c), which provides, in pertinent part:

"It is unlawful for any practitioner to prescribe, administer, manufacture, distribute, dispense, or possess any controlled dangerous substance or controlled paraphernalia except in the course of his regular professional duties, and in conformance with both the provisions of this subtitle and the standards of his particular profession relating to any such controlled dangerous substance or controlled paraphernalia."

The third counts do contain the necessary words "knowingly or intentionally" so as to charge a criminal offense. The appellees claimed below as they do now, and the hearing judge ruled, that a material element of the offense was not charged because of the failure of the third counts to allege that each of the appellees was a "practitioner." It would undoubtedly have been preferable if the word "practitioner" had been included in the indictment. It was apparently left out inadvertently. It is for us to consider whether that omission is fatal to the charge. We are guided in this regard by the law set out in *Baker v. State*, 6 Md. App. 148, 156-157, 250 A. 2d 677:

"The general rule is that an indictment charging an offense denounced and defined by statute should be as fully descriptive of the offense as is the language of the statute and should allege every substantial element of the offense as defined by the statute without material diversion or departure from the fair intendment of the terms of the

---

Maryland. For an application of this section, see *Williams v. State*, 4 Md. App. 342, 345-347, 242 A. 2d 813.

Notwithstanding the existence of Article 38, § 1, we are persuaded that when the Legislature adopted the Controlled Dangerous Substances Act in 1970 and in doing so incorporated bodily the provisions of the proposed draft of the Federal Controlled Substances Act, it intended the words and phrases under Maryland law to have the meaning which they had under the parent federal law.

statute, and with reasonable particularity of time, place and circumstances.

'It is not necessary that an indictment contain all the language of the statute on the subject; all that must be alleged is that which is requisite to charge the offense, or that which constitutes the essential ingredients of the offense as denounced by the statute. Words may be omitted if they are necessarily implied from those contained in the charge. * * * An indictment or information for such an offense is sufficient if it follows the language of the statute substantially or charges the offense in equivalent words or others of the same import if the defendant is thereby fully informed of the particular offense charged, and the court is enabled to see therefrom on what statute the charge is founded. * * * The statutory offense should be laid with the certainty of the statutory terms but should not be prolix, involved and obscure.' 4 *Wharton's Criminal Procedure*, § 1794, pp. 618-619 and § 1796, pp. 622-624."

The third counts in question did contain the following predicates:

"... did unlawfully, knowingly and intentionally prescribe a Controlled Dangerous Substance of Schedule II, to wit: Dilaudid, which is a narcotic drug not in the course of his regular professional duty, not in conformance with the standards of the Medical Profession, and not in conformance with the provisions of the Maryland Controlled Dangerous Substances Act..."

We hold that the phrases "not in the course of his regular professional duty" and "not in conformance with the standards of the Medical Profession" necessarily implied the missing term "practitioner" and did serve to put the appellees on notice of the offense with which they were charged.

The appellee Moores raises an additional ground for dismissing the indictments against him. The appellee was summoned to appear before the Baltimore City Grand Jury on May 21, 1974, "to testify concerning certain matters now under investigation by the Grand Jury." Pursuant to that summons, he appeared and testified concerning the matters for which he was later indicted. In the appellee's motion to dismiss below, he contended, *inter alia*, that he was a "compelled witness" before the grand jury that indicted him and that he is, therefore, exempt from prosecution under the instant indictments pursuant to Article 27, § 298 (c), which provides:

> "*Witnesses' immunity.* — No person shall, upon pain of contempt of court, refuse to testify concerning any violations of the provisions of this subheading [Controlled Dangerous Substances] because his testimony might tend to incriminate him or implicate him in such violations and every such person shall be a competent witness and compellable to testify against any person who may have committed any of the offenses set forth under this subheading, provided that any person so compelled to testify on behalf of the State in any such case shall be exempt from prosecution, trial and punishment for any and all such crimes and offenses about which such person was so compelled to testify."

He maintains further that he did not waive that immunity from prosecution.

After dismissing the indictments on the grounds previously discussed in this opinion, the hearing judge stated:

> "I would also like to state for the record that had the issue been reached, I would have found defendant John Duer Moores a compelled witness under Article 27, section 298 (c), and thus exempt from prosecution on all crimes which he testified about before the Grand Jury."

The appellee urges us to apply Md. Rule 1085 and to consider this issue. Md. Rule 1085 provides in pertinent part:

> "This Court will not ordinarily decide any point or question which does not plainly appear by the record to have been tried and decided by the lower court; but where a point or question of law was presented to the lower court and a decision of such point or question of law by this Court is necessary or desirable for the guidance of the lower court or to avoid the expense and delay of another appeal to this Court, such point or question of law may be decided by this Court even though not decided by the lower court."

Because this point was fully argued by both the State and the appellee Moores at the hearing on the motion to dismiss, we deem it advisable in the interest of justice and to conserve time and expense to consider it at this time.

We believe the appellee Moores was "compelled" to testify before the grand jury within the meaning of Article 27, § 298 (c). *State v. Panagoulis*, 3 Md. App. 330, affirmed in 253 Md. 699, which dealt with a similar immunity provision in the laws relating to bribery offenses, is dispositive of this question:

> "[W]ith regard to the question of a witness being compelled to testify, it is immaterial how he got before the grand jury. Once he is there, is sworn and testifies, he has been compelled to testify within the meaning of the statute." 3 Md. App. at 336-337.

The State, however, argued at the hearing on the motion to dismiss that the appellee Moores waived any immunity from prosecution. The following is a transcript of the pertinent parts of the grand jury proceedings, read into the record at the hearing:

> "ASSISTANT STATE'S ATTORNEY: This Grand Jury has been empaneled to investigate certain alleged improprieties with respect to illegal dispensing and prescribing of narcotic drugs.

You have been summoned before the Grand Jury not as a mere innocent witness, but as a possible suspect and potential defendant in connection with the crimes which I have just mentioned. Because of your respectable position in the community, the Grand Jury has withheld any action upon indictments in order to give you an opportunity to appear here today and explain, if you can, the apparent irregularities which the evidence discloses. Do you understand what I have said thus far?

DR. MOORES: Yes.

ASSISTANT STATE'S ATTORNEY: I want to make it clear to you that just because you are here under compulsory process, the summons which you received, you should not assume that you thereby gain immunity from prosecution in connection with the crimes which I have mentioned or any other crimes that I have not mentioned. You should clearly understand that you are not going to be compelled to testify and that you do not have immunity from prosecution. For this reason, you should consider your answers very carefully, and because of the fact that you are under suspicion and have not been granted immunity, it becomes my duty at this point to outline the rights which you have as a potential defendant.

First of all, you have an absolute right under the Constitution of the United States and the laws of the State of Maryland to refuse to answer any questions which you think may tend to incriminate you. In other words, you have an absolute right to remain silent. Do you understand that?"

The Assistant State's Attorney then continued:

"Finally, I don't want to lull you into a false sense of security so I remind you that you have not been granted immunity and that you will not be compelled to answer but that any answer which

proves incriminating will be used against you in both criminal and administrative proceedings. You should consider your answers carefully. If you choose to answer, you do so at your peril."

The State's position was that the appellee was advised of his rights, advised that he was appearing as a potential defendant, and advised that he would not be granted immunity from any narcotics violation which was under investigation because he would not be compelled to testify. The State argued, therefore, that since the appellee knew that he would not be compelled to testify, that he at least implicitly waived any immunity conferred by the statute when he so testified.

The Court of Appeals in *State v. Comes*, 237 Md. 271, rejected precisely such an argument. In referring to *Comes*, this Court in *State v. Panagoulis, supra*, stated:

"*Comes* held that under the statute here involved it was not necessary that a witness claim his privilege against self-incrimination in order to obtain the exemption afforded by the statute. We think it obvious that as the statute takes away the privilege, the witness cannot lose the immunity granted by the statute by failing to assert a privilege not available to him." 3 Md. App. at 338.

Nor was there any express waiver of immunity by the appellee. The appellee was not informed by the Assistant State's Attorney at the grand jury proceedings of the provisions of Article 27, § 298 (c). No written waiver of immunity was ever obtained. Nor was there any waiver of immunity by conduct, referred to in *State v. Comes*, 237 Md. at 282, as where a witness appears before a Grand Jury "by subterfuge ..., collusion or otherwise." This Court in *Panagoulis* stated:

"We also think that there were no other circumstances shown sufficient to establish that the appellee otherwise waived immunity by his conduct. That he may have hoped to convince the grand jury that he was in no way culpable and so

prevent an indictment from being returned against him or that, in the words of the lower court, 'his hope in going before the grand jury was to help himself,' are not sufficient to constitute a constructive waiver of immunity. Nor may he be denied the immunity because he in fact knew or was presumed to know the law and was thus aware that if he testified under the circumstances here present, he would be exempt from prosecution. The grand jury and the prosecuting authorities are also presumed to know the law, and when the appellee was permitted to testify without an express waiver of immunity by him, he was then, under the circumstances existing, in the absence of conduct on his part sufficient to constitute a waiver, exempt from prosecution, trial and punishment." 3 Md. App. at 339-340.

Accordingly, we affirm the judgment of the court below in dismissing the indictments as to the appellee John Duer Moores.

> *Order dismissing indictments 17401237, 17401238, 17401239, 17401240, 17401241, 17401242 and 17401243, as to the appellee Moores, affirmed; order dismissing indictments 17401215, 17401231, 17401244 and 17401254 vacated; order dismissing first, second, third, fifth and sixth counts of all other indictments vacated; order dismissing fourth and seventh counts of all other indictments affirmed; case remanded for further proceedings; costs to be paid by the appellees Fearing, Herrmann, Lai, Cohen, Certeza and Polek.*