## Commonwealth v. Collier.

(Decided June 21, 1918.)

### Appeal from Graves Circuit Court.

1. Gaming—Betting on Election—Where Offense Committed.—Where the parties really made a bet on an election while they were in Kentucky and went to a town in Tennessee where they put up the money in a Tennessee bank and returned to Kentucky, the bet was made in Kentucky and the parties may be punished under section 1975 of the Kentucky Statutes for betting on an election in this state.

2. Gaming—Betting on Election—Crimination of Witness.—Section 1973 of the Kentucky Statutes providing that in any prosecution for a penalty against "gaming" it shall be no exemption for a witness that his testimony may criminate himself, applies in a prosecution for a penalty against betting on an election.

3. Criminal Law—Separate Statement of Law and Fact—Section 332 Civil Code—Application.—Section 332 of the Civil Code of Practice providing that the court's conclusions of law and facts shall be separately stated, if requested, upon the trials of questions of fact by the court, in order to enable a party to review the questions of law upon an appeal, has no application to criminal trials.

CHARLES H. MORRIS, Attorney General, and H. M. HOWERTON, Assistant Attorney General, for appellant.

STANFIELD & STANFIELD for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

In its facts this case runs on all fours with the recent case of Commonwealth v. Crass, 180 Ky. 794. It presents, however, two questions of law which were not raised in the Crass case.

Collier was indicted, tried and acquitted in the Graves circuit court upon the charge of betting on an election, with Ed. Mohondro. Ky. Stats., sec. 1975. As in the Crass case, the parties went together to Dukedom, just over the Tennessee line, and placed their money which they had wagered on the election, in the Dukedom Bank, and returned to Mayfield. The only fact which distinguishes this case from the Crass case is that Collier seems to be more intelligent than Crass, since he admits he knew the purpose for which he and Ed. Mohondro went to Dukedom, whereas Crass did not know the purpose of his visit to the same place and for the same purpose. This fact, however, makes this case a stronger case for the Commonwealth, since Collier was

conscious and in his right mind throughout the transaction.

In view of the conclusion reached in the Crass case we deem it unnecessary to discuss the facts of this case; it is sufficient to say that, the facts of the two cases being identical, the court erred in acquitting the appellee.

2.   Ed. Mohondro was the only witness in this case; and when he was asked to tell about the bet between him and Collier, Collier objected to the question and Mohondro joined in the objection. The court overruled the objections and required Mohondro to answer. It is contended that this was error because it required Mohondro to give evidence that might incriminate him.

While recognizing the general rule that a witness will not be required to incriminate himself, the Commonwealth insists that the case falls within section 1973 of the Kentucky Statutes, which reads as follows:

"In any prosecution for a penalty against gaming, it shall be no exemption for a witness that his testimony may criminate himself; but no such testimony given by the witness shall be used against him in any prosecution except for false swearing or perjury, and he shall be discharged from all liability for any gaming so necessarily disclosed in his testimony; and, furthermore, the person against whom he testifies shall not be received to prove any gaming theretofore by such witness."

Appellee denies the application of the statute, claiming that this is not a case of "gaming" within the meaning of the statute, and that section 1973 does not, therefore, lift the inhibition upon Mohondro's testimony.

It is true that in some of the earlier cases in this state it was held that an election was not a "game" within the meaning of the statute, or in any other sense. See Love v. Harris, 18 B. Mon. 98.

McDevitt v. Thomas, 130 Ky. 805, was an action to recover money loaned, the defense being that the money was to be bet on a horse race, and could not, for that reason, be recovered. Ky. Stats., sec., 1955. It was held that betting upon the result of a horse race was not gaming within the meaning of the statute. See also Cheek v. Commonwealth, 79 Ky. 359.

If these decisions stood unopposed we would, of course, be controlled by them. But in the late case of Bentler v. Commonwealth, 143 Ky. 503, a different view was expressed as being the correct view under the pres-

ent statute. Bentler was jointly indicted with Tomlin under section 1960 of the Kentucky Statutes for setting up and conducting a poker game; and, Bentler had given testimony before the grand jury upon the assurance of the Commonwealth's attorney that no testimony he might give could be used against him in any prosecution, except for perjury or false swearing. Bentler, having been indicted for keeping the poker room about which he had testified, claimed exemption from prosecution by virtue of section 1973 of the statute above quoted; and, the question was thus raised whether conducting a poker room constituted "gaming" within the meaning of the statute.

The Commonwealth conceded that setting up and operating the games denounced by section 1960 was "gambling" but insisted that it was not "gaming," and that section 1973 applied only to cases of "gaming." But in holding that gaming and gambling were synonymous terms, the court said:

"It is, however, argued for the Commonwealth that the exemption from prosecution allowed by section 1973, of the statute, *supra,* does not apply to the offense for which appellant was convicted. In other words, it is contended that the exemption is only as to gaming in which the accused engaged, as disclosed by his testimony.

"It is conceded by counsel for the Commonwealth that setting up and operating the game denounced by section 1960 is gambling but insisted that it is not gaming and that there is a distinction between 'gaming' and 'gambling.' There is no force in this contention.

"If appellant set up and carried on a poker game at which money was bet, won and lost, and out of which he received a take out, commission or profit as charged in the indictment, his acts constituted 'gaming' in the meaning of section 1973, and also 'gambling.' The words are synonymous, and are used interchangeably in the statute and in the opinions of this court. While it is true that in the case of Check v. Commonwealth, 100 Ky. 1, a distinction seems to be made in the meaning of the words 'game' and 'hazard,' as used in the statute against gaming, it was held that the distinction lies in the broader meaning of the word 'hazard' for, as there said, a wager of any kind is a hazard in the meaning of that word as used in the statute. Hazard included 'gaming,' but

gaming does not include 'hazard.' Obviously the exemption from prosecution allowed by section 1973 applies to the offense of setting up and carrying on a poker game as denounced by section 1960 under which appellant was indicted.''

It will be observed that section 1960 relating to the operation of faro-banks, poker rooms or like places where money may be won or lost, and section 1975, relating to betting on elections, as well as section 1973, excusing a witness from testifying when he might thereby incriminate himself, are all parts of chapter 58 of the Kentucky Statutes relating to the general subject of gaming, and that there are no subdivisions in the chapter which would indicate that section 1973 applied to some of the offenses against gaming, as named in the chapter, and not to all of them.

The court is of the opinion, therefore, that the circuit court properly overruled the objection to Mohondro's testimony.

3. Finally it is contended that there can be no review in this case because the case was, by agreement, tried by the court without the intervention of a jury, and no separation of the court's conclusions of law and fact was made or requested in the lower court. No authority is cited to sustain this proposition.

We are aware that section 332 of the Civil Code of Practice provides that the court's conclusions of law and facts shall be separately stated, if requested, upon the trials of questions of fact by the court, in order to enable a party to review the questions of law in this court. But that provision does not apply to criminal trials. Criminal trials are regulated by the Criminal Code of Practice, and we have been referred to no provision of that code requiring or authorizing the court to separate its conclusions of law and fact.

Judgment reversed for a new trial.