# BROWN *v.* STATE

[No. 30, September Term, 1963.]

*Decided January 13, 1964.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*Jerome F. Connell,* with whom was *Edwin A. Lechowicz* on the brief, for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Thomas B. Finan, Attorney General, Marvin H. Anderson* and *John A. Blondell, State's Attorney* and *Deputy State's Attorney,* respectively, *for Anne Arundel County,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Anne Arundel County finding the appellant, James Dawson Brown, guilty of contempt by reason of his refusal to obey an order of that court to answer before the Grand Jury for Anne Arundel County certain questions which had been propounded to him before that body, and fining him $500.00 and sentencing him to jail until he should purge himself of contempt by answering the questions. He was released on bail pending this appeal.

The questions which the appellant refused to answer were

propounded to him in the course of a grand jury investigation into the alleged bribery of a Trial Magistrate for Anne Arundel County "for the purpose of squelching or dismissing" a traffic charge against the appellant. Most of the questions pertained to a direct charge of bribery, but one pertained to conspiracy to bribe this official. The appellant's fundamental basis for refusing to answer was and is the privilege against self-incrimination under Article 22 of the Maryland Declaration of Rights.[1] The State contends that the testimony of the appellant was compellable and that he was entitled to immunity in respect thereof under Section 23 of Article 27 of the Code (1957), enacted pursuant to Section 50 of Article 3 of the Maryland Constitution. The appellant contends: first, that the statutory immunity afforded is not broad enough to "abridge" the privilege against self-incrimination contained in Article 22 of the Declaration of Rights; and second, that the statutory immunity is not applicable to a proceeding before the grand jury. The State accepts the issues as tendered by the appellant, except that it substitutes "displace" for "abridge" in the first of them.

Article 22 of the Maryland Declaration of Rights reads as follows:

"That no man ought to be compelled to give evidence against himself in a criminal case."

It is very similar in language to the corresponding clause of the Fifth Amendment to the Constitution of the United States providing that

"No person * * * shall be compelled in any criminal case to be a witness against himself."

The appellant relies on cases decided under the Fifth Amendment and urges that its interpretation should control the interpretation of Article 22 of the Declaration of Rights, but he

---

1. At the last of three hearings in the trial court, he spoke of his privilege under the Fifth Amendment—meaning, doubtless, to the Constitution of the United States—but, as we later point out, he does not now assert any claim of violation of rights under that Amendment.

does not assert that the Fifth Amendment is itself applicable here.

Section 50 of Article 3 of the Constitution of Maryland of 1867 provides in part:

> "It shall be the duty of the General Assembly * * * to provide by Law for the punishment * * * of any person, who shall bribe, or attempt to bribe, any Executive, or Judicial officer of the State of Maryland, or any member, or officer of the General Assembly of the State of Maryland * * *; and also to provide by law for the punishment, * * * of any of said officers, * * * who shall demand or receive any bribe, * * *; and, also, to provide by law for compelling any person, so bribing or attempting to bribe, or so demanding, or receiving a bribe, fee, reward, or testimonial, to testify against any person, or persons, who may have committed any of said offenses; provided, that any person, so compelled to testify, shall be exempted from trial or punishment for the offense, of which he may have been guilty."

Section 23 of Article 27 of the Code (1957) enacted in compliance with the above requirements provides for the punishment of any person bribing or attempting to bribe public officers, including any judge, justice of the peace or other judicial officer of the State, and of any such officer demanding or accepting a bribe, fee, reward, or testimonial for the purpose of influencing his performance of his official duties or of neglecting or failing to perform the same. It then continues:

> "[A]ny person so bribing or attempting to bribe or so demanding or receiving a bribe shall be a competent witness, and compellable to testify against any person or persons who may have committed any of the aforesaid offenses; provided, that any person so compelled to testify on behalf of the State in any such case shall be exempt from prosecution, trial, and punishment for any such crime of which such person so testifying may have been guilty or a participant therein and about which he was so compelled to testify."

294

Both sides, of course, cite Section 23 of Article 27, *supra,* but neither refers to Section 39 of that Article, which deals with compelling testimony of participants in conspiracies to violate Section 23 (and certain other offenses).[2] Since one question here asked pertained in part to such a suggested conspiracy, we set forth below the pertinent part of this statute:

"No person shall refuse to testify concerning the crime of conspiring to commit any of the offenses set forth in § 23 of this article, * * *, and any person shall be a competent witness and compellable to testify against any person or persons who may have conspired to commit any of the aforesaid offenses, provided that any person so compelled to testify in behalf of the State in any such case, shall be exempt from prosecution, trial and punishment for any and all such crimes and offenses of which such person so testifying may have been guilty or a participant or conspirator therein and about which he was so compelled to testify."

The State contends with considerable force that Section 50 of Article 3 of the Constitution and Section 23 of Article 27 of

---

2. There are a number of other statutes in this State dealing with the compellability of testimony with regard to offenses and the grant of immunity to persons compelled to testify. The language is not uniform. Thus Code 1957, Article 27, § 540 (prevention of sabotage); Article 48 A, § 359 (infractions of the insurance laws); and Article 95A, § 12 (j) (unemployment insurance law), use the "transaction, matter or thing" language of the immunity statute upheld in *Brown v. Walker,* 161 U. S. 591. Code (1957), Article 101, § 8 (workmen's compensation law) refers even more broadly to "any act, transaction, matter or thing." On the other hand, Article 27, §§ 262 and 371 (gaming and lotteries), refer, in language similar to that of the statute in suit, to prosecutions for "any and all such" offenses. Article 27, § 400 (sale of liquor to minors), refers to offenses "under this section." Article 27, § 24 (bribery in connection with athletic contests), limits immunity to prosecutions for "the crime", while Article 81, § 359 (retail sales tax act) does not bar subsequent prosecutions at all, but forbids only the "use" of compelled testimony in "any subsequent prosecutions." Article 75, § 74, and Rule 628 (supplementary proceedings) refer to prosecutions "based upon such fraud."

the Code (1957) have so completely occupied the field as to immunity from prosecution for offenses as to which testimony in bribery cases is compelled that Article 22 of the Declaration of Rights has no applicability in such cases. It relies on *Anderson v. Baker,* 23 Md. 531, holding that the Registry Act of 1865, passed pursuant to certain provisions of the Constitution of 1864 imposing a test oath and requiring persons seeking registration as voters to answer under oath questions pertaining to their loyalty to the United States, did not fall within what was then Article 23 of the Bill of Rights, and further, that if the voting privilege were within the contemplation of Article 23, it was withdrawn or excepted from its operation by the express provisions of the Constitution relating to voting. (23 Md. at 591.) See also *Mayor and City Council of Baltimore v. State,* 15 Md. 376, at p. 459, holding that a specific constitutional provision prevails as a limitation upon a general principle set forth in the Declaration of Rights.

Other states having constitutional immunity provisions similar to ours have held that they limit the constitutional privilege against self-incrimination. See *State v. Rodrigues,* 219 La. 217, 52 So. 2d 756; *State v. Dominguez,* 228 La. 284, 82 So. 2d 12; *Commonwealth v. Bell,* 145 Pa. 374, 389, 22 Atl. 641; *Commonwealth v. Cameron,* 229 Pa. 592, 79 A. 169; *Commonwealth v. Haines,* 171 Pa. Super. 362, 90 A. 2d 842; Maguire, *Evidence of Guilt,* 70 n. 13. It may be noted, however, that the Louisiana constitutional immunity provision involved in the *Rodrigues* and *Dominguez* cases is in terms self-executing and does more than establish a duty in the legislature to implement it. In addition, the self-incrimination provision of the Louisiana constitution, unlike Section 22 of our Declaration of Rights, contains the phrase "except as otherwise provided in this constitution." The self-incrimination provision of the Pennsylvania constitution is likewise self-executing, and it does not contain a clause relating to exceptions.

Such a view also finds some support in the debates on the constitutional provision here involved. See Perlman, *Debates of the Maryland Constitutional Convention of 1867,* p. 286. One objection made to Section 50 of Article 3 was "that it violated the principle of the Declaration of Rights, which declares that

no man shall be compelled to give evidence against himself."
A proposed amendment to strike the clause compelling persons offering bribes to testify against those receiving them was, however, defeated.

We think that Section 23 of Article 27 of the Code (1957) undertakes to give in full the immunity contemplated by Section 50 of Article 3 of the Constitution, and in terms is somewhat broader, but is not beyond the constitutional authorization. We might rest our opinion on the ground that this statutory provision founded upon the constitutional mandate (as in *Anderson v. Baker, supra*) limits the scope of Article 22 of the Declaration of Rights, if there were any conflict between them.

We think, however, that there is no real conflict between Article 22 of the Declaration of Rights and the statutory immunity here granted. The general rule (apart from a constitutional provision, whether self-executing or implemented by statute, which in terms or by implication limits the privilege against self-incrimination) is that in order to be valid, the immunity granted must be as broad as the privilege against self-incrimination which it supplants or displaces.

Our Article 22 is in *pari materia* with the provisions of the Fifth Amendment to the Federal Constitution against self-incrimination, and it should, we think, receive a like construction. *Adams v. State,* 202 Md. 455, 460, 97 A. 2d 281, reversed on another ground, 347 U. S. 179; *Bass v. State,* 182 Md. 496, 500, 35 A. 2d 155; *Blum v. State,* 94 Md. 375, 382, 51 Atl. 26.[3]

Historically, at least, *Counselman v. Hitchcock,* 142 U. S. 547, is the foundation of the general rule as to immunity statutes above stated, although in that case the particular Act involved was held not to grant a sufficiently broad immunity. In *Brown v. Walker,* 161 U. S. 591, the statute before the Su-

---

3. The Fifth Amendment has not heretofore been held binding upon the States through the Fourteenth Amendment. *Twining v. New Jersey,* 211 U. S. 78; *Adamson v. California,* 332 U. S. 46. We note, however, that certiorari has been granted, 373 U. S. 948, to review *Malloy v. Hogan,* 150 Conn. 220, 187 A. 2d 744, which involves this matter.

preme Court was apparently drafted on the basis of the *Counselman* opinion, and provided that "no person shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter, or thing, concerning which he may testify." This was held by a divided Court sufficiently broad to displace the privilege accorded by the Fifth Amendment. The statute sustained in *Brown* has been taken as a model by many later state and federal statutes. See *Model State Witness Immunity Act*, 9 C Uniform Laws Ann. 186 (with the qualification that the immunity is to be no broader than the privilege) and the commentary on it in the *1952 Handbook of The National Conference of Commissioners on Uniform State Laws*, pp. 256-57; 8 Wigmore, *Evidence* (McNaughton Rev.), § 2284. These statutes derive from a suggestion by the Supreme Court in the *Counselman* case that statutes thus drawn would be valid. The *Counselman* case and its statutory progeny have been criticized by the commentators, notably Wigmore and McCormick. See 8 Wigmore, *Evidence* (McNaughton Rev.), at pp. 522-25 and n. 4; McCormick, *Evidence*, pp. 285-86. The commentators maintain that the court could easily have construed the *Counselman* statute as barring the indirect as well as the direct use of compelled testimony, and could have held that it barred the use of evidence obtained as a result of "leads" derived from compelled testimony.

In our opinion an immunity statute, in order to be valid, need not be couched in precisely the same terms as that suggested in *Counselman* and upheld in *Brown v. Walker, supra*, if its effect is to grant protection as broad as that afforded by the privilege which it displaces. We think that such protection is afforded by the immunity granted by Section 23 of Article 27 of the Code (1957). The immunity thereby granted to the witness compelled to testify from "prosecution, trial, and punishment for any such crime of which such person so testifying may have been guilty or a participant therein and about which he was so compelled to testify" is a broad immunity. Since it bars "prosecution," it effectively bars the use of "leads" to convict the witness of the offense as to which he testifies, and it covers the offense of attempting to bribe as well as actual bribing. We further think that the broad language referring to "any

such crime of which" he "may have been guilty" may fairly be construed and should be construed as including conspiracy to violate the bribery law; but even if it were not, this gap in statutory protection would be closed by Section 39 of Article 27, *supra.*

*Brown v. Walker, supra,* relies on a number of early state court cases upholding the validity of immunity statutes worded more narrowly than the statute here in suit. Reference was there made to cases upholding statutes limiting immunity from prosecution to "any offence committed at the time and place indicated", *Kendrick v. Commonwealth,* 78 Va. 490, or limiting immunity from prosecution to "the offense with reference to which testimony was given," *Ex Parte Cohen,* 104 Cal. 524, or to "that bribery" testified to by the witness. *People v. Sharp,* 107 N. Y. 427. See *Brown v. Walker,* 161 U. S. at pp. 602-05.

Nor do subsequent Supreme Court decisions establish a total amnesty rule. The reference to "full and complete immunity against prosecution" in *United States v. Murdock,* 284 U. S. 141, should, we think, be read in the context of the earlier cases cited. The same may be said of the dictum in *United States v. Bryan,* 339 U. S. 323, 336. In *Ullmann v. United States,* 350 U. S. 422, 437, the court observed that the *Counselman* statute had been invalidated because "it merely forbade the use of the testimony given and failed to protect a witness from future prosecution *based on* knowledge and sources of information obtained from the compelled testimony. It was with this background that the 1893 statute, providing complete immunity from prosecution, was passed and that *Brown v. Walker* was argued and decided." (Emphasis added). See also *United States v. Monia,* 317 U. S. 424, 428. We think the references to a requirement of absolute immunity in this and other cases refer to immunity from prosecution as opposed to immunity merely from the later use as evidence of recorded testimony, and that as to the range of offenses, they do not require a greater protection than that the statute must bar prosecution for all offenses with regard to which the testimony of a witness may be compelled. As to other offenses, we think, the privilege is neither impaired nor supplanted.

Numerous state cases arising after *Counselman* and *Brown*

*v. Walker* have upheld the validity of state statutes which confer a narrower immunity from prosecution than that conferred in the *Brown* case. See *Doyle v. Hofstadter,* 257 N. Y. 244, 177 N. E. 489; *Commonwealth v. Collier,* 181 Ky. 319, 204 S. W. 74; *Flanary v. Commonwealth,* 113 Va. 775, 75 S. E. 289; Notes, 118 A.L.R. 602, 624; 53 A.L.R. 2d 1030, 1050. But compare *State ex rel. Mitchell v. Kelly,* 71 So. 2d 887 (Fla.) ; *State v. Hennessey,* 195 Ore. 355, 245 P. 2d 875. It has been said of these cases by a notewriter that "any conflict among them is more illusory than real; for in those instances in which the courts have held the witness to be adequately protected by such an immunity, it has not appeared that by answering the question the witness would have revealed any offense other than that or those included in the immunity; whereas in cases holding such an immunity to be inadequate, the courts have been of opinion that answers to the questions would have exposed the witness to prosecution for offenses different from those covered by the immunity." 118 A.L.R. at p. 624.

We find no merit in the appellant's contention that his answers to questions would expose him to prosecution for "unrelated crimes." The appellant does not specify the character of these unrelated crimes and we think that our holding that the statute immunizes him from prosecution for conspiracy to bribe as well as bribery and attempted bribery supplies him with all the safeguards to which he is entitled. "[T]he constitutional protection is confined to real danger and does not extend to remote possibilities out of the ordinary course of law. *Brown v. Walker,* 161 U. S. 591, 599, 600." *Heike v. United States,* 227 U. S. 131, 144 (Holmes, J.). "When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness." *Mason v. United States,* 244 U. S. 362, 364, see also *The Queen v. Boyes,* 1 B. & S. 311, 329, 330.

The appellant does not claim that the failure of the immunity statute to protect against prosecution for federal offenses renders it defective. Such a claim would have no basis under present law. *Knapp v. Schweitzer,* 357 U. S. 371; *Feldman v. United States,* 322 U. S. 487. Moreover, even if failure

to guarantee against federal incrimination would invalidate a state immunity statute and this claim were properly raised, we think that on the facts of this case the threat of federal prosecution for attempting to bribe a state trial magistrate to "fix" a traffic violation would be too remote to make the claim sustainable. We note that in *Doyle v. Hofstadter,* 257 N. Y. 244, 267, 177 N. E. 489, Judge Cardozo "put aside as remote and insubstantial the supposed peril of exposure to prosecution for the making of false tax returns to state or federal officers." We think that we may do the same here.

We also find the appellant's claim that he was not obliged to give testimony at grand jury proceedings not to be sustainable. The statute provides that a person involved in the bribery "shall be a competent witness, and compellable to testify against any person or persons who may have committed any of the aforesaid offenses, * * * provided, that any person so compelled to testify in behalf of the State in any such case shall be exempt from prosecution. * * *." Code (1957), Article 27, Section 23. The statute contains no limiting phrases, unless "in any such case" is to be read as such. We think that it is not.

McCormick, *Evidence,* § 123, states: "Despite the language of the Federal Fifth Amendment and many similar state provisions, purporting to limit the protection to criminal cases, it is clear that the privilege of a witness not to answer incriminating questions extends to all judicial or official hearings, investigations or inquiries where persons are called upon formally to give testimony. A witness has this protection accordingly in a * * * civil or criminal case, or in * * * an investigation or hearing by a grand jury * * *." See *Counselman v. Hitchcock, supra,* and *United States v. Monia, supra.* In the latter case (317 U. S. at 427), Mr. Justice Roberts, writing the majority opinion and citing *Counselman,* stated flatly: "An investigation by a grand jury is a criminal case." The applicability of the privilege against self-incrimination to a witness testifying before a grand jury was recognized by our predecessors in *Gamble v. State,* 164 Md. 50, 163 A. 859. In that case, in speaking of the appearance of the appellants-defendants before the grand jury this Court said (164 Md. at 52): "If they had thought they were in any danger of indict-

ment, they could have declined to testify on the ground that their evidence might incriminate them. * * * They might have been compelled to obey the summons, but no power could compel them, against their will, to give evidence which might result in their indictment for the offense then being investigated." We regard it as inconceivable that the Legislature could have intended to limit the immunity so as to make it unavailable as to testimony given before a grand jury. A contrary view might frustrate the plain intention of the constitutional provision and of the statutes relating to bribery by cutting off prosecution virtually at its inception. An indictment (or under provisions for the waiver of an indictment, an information) is a prerequisite to a trial.

To avoid possible difficulty in the future, we think it advisable to comment upon a statement in *Gamble* (164 Md. at 53) to the effect that a grand jury investigation is not a "case" within the meaning of the Fifth Amendment to the Federal Constitution. This statement was not, in our view, necessary to the actual decision of the *Gamble* case,[4] and it was not, in our judgment, a correct statement of the law with regard to grand jury proceedings in the light of the views of the Supreme Court expressed in *Counselman* (1893) above referred to, which were, as we have also pointed out, subsequently reaffirmed in *Monia* (1943). The precise significance of this statement is not clear to us; but if it means, as we think it does, that the privilege against self-incrimination "in a criminal case" does not apply in grand jury proceedings, it seems irreconcilable with the very positive statement in the same opinion which we have quoted above that the appellants could have availed themselves of the privilege before the grand jury.

The principal actual holding of *Gamble* was that the fact that the defendants had testified before the grand jury which subsequently indicted them, without asserting their privilege against self-incrimination, did not invalidate the indictment. This holding was in accord with *Pick v. State,* 143 Md. 192,

---

4. We also note that this statement was made in reply to a contention of the appellants based on the Fifth Amendment. The opinion does not contain any discussion of the applicability of the Fifth Amendment. See note 3, *supra.*

302

121 A. 918. We think that the opinion in *Pick*, by a passage quoted (at p. 198 of 143 Md.) from *People v. Lauder*, 82 Mich. 119, also clearly supports the view that the privilege is available to a witness called to testify before a grand jury. Any possible implication to the contrary which may be suggested by the reference to *Pick* in *Gamble* would not, in our estimation, be supportable. :

The appellant also asserts that even if immunity might be held to extend to grand jury proceedings under most state statutes, the plenary inquisitorial powers of Maryland grand juries, as established in such cases as *Blaney v. State*, 74 Md. 153, 21 Atl. 547, dictate a different result here since, as he puts it, "The Grand Jury upon its own volition despite the promises of immunity by the State * * * [might] indict for the same matters for which the State claims to grant immunity." We may note that the possession of plenary powers by grand juries is not unique to Maryland; it is significant that the Supreme Court in holding an immunity statute applicable to grand jury proceedings in *Hale v. Henkel*, 201 U. S. 43, 66-67, made reference (at p. 63) to *Blaney v. State, supra.* See 201 U. S. at 63. Moreover, the short answer to appellant's fear of the grand jury was supplied in *Brown v. Walker* (161 U. S. at p. 608) : "The same answer may be made to the suggestion that the witness is imperfectly protected by reason of the fact that he may still be prosecuted and put to the annoyance and expense of pleading his immunity by way of confession and avoidance. This is a detriment which the law does not recognize. There is a possibility that any citizen, however innocent, may be subjected to a civil or criminal prosecution, and put to the expense of defending himself, but unless such prosecution be malicious, he is remediless, except so far as a recovery of costs may partially indemnify him."

*Judgment affirmed, costs to be paid by the appellant.*