## LEONARD SAUL BLONDES *v.* STATE OF MARYLAND

[No. 32, September Term, 1972.]

*Decided September 11, 1972.*

166

The cause was argued before MURPHY, C. J., ▮ and ORTH and THOMPSON, JJ.

*Joseph B. Simpson, Jr.*, with whom were *Vivian V. Simpson, H. Algire McFaul, Joseph J. D'Erasmo* and *Simpson & Simpson* on the brief, for appellant.

*James G. Klair, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Andrew*

*L. Sonner, State's Attorney for Montgomery County, James McKenna* and *Thomas L. Craven, Assistant State's Attorneys for Montgomery County,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Maryland Code, Article 27, Section 23 provides that it shall constitute the offense of bribery for "any member of the General Assembly of Maryland * * * [to] demand or receive any bribe, fee, reward or testimonial for the purpose of influencing him in the performance of his official duties, or for neglecting or failing to perform the same."

Appellant Blondes, a lawyer and Montgomery County Delegate to the General Assembly of Maryland from 1962 to 1970, was charged with violating this statute; the indictment alleged, in two counts, that on December 10, 1967 Blondes demanded, and on January 4, 1968, he received a fee of $5,000 from "The Montgomery County Bowling Proprietors' Association, C. Edward Goldberg, Leroy Rinaldi, William S. Glennie, Revelle Stuart Armiger, and persons unknown * * * for the purpose of influencing * * * [him] in the performance of his official duties."

Prior to trial, Blondes moved to dismiss the indictment on the ground that as the prosecution was predicated upon legislative activities performed by him while a member of the Legislature, he was afforded constitutional immunity from trial in a court of law by reason of the Speech and Debate clauses contained in Article 10 of the Maryland Declaration of Rights and Section 18 of Article 3 of the Maryland Constitution, which, respectively, provided:

(Article 10)

"That freedom of speech and debate, or pro-

ceedings in the Legislature, ought not to be impeached in any Court of Judicature."
(Section 18)
    "No Senator or Delegate shall be liable in any civil action, or criminal prosecution, whatever, for words spoken in debate."

Blondes maintained in his motion to dismiss that the cited Maryland provisions were in *pari materia* with the Speech or Debate clause contained in Section 6 of Article 1 of the United States Constitution which provides that "for any Speech or Debate in either House, they [Senators and Representatives] shall not be questioned in any other Place." Blondes claimed that the Supreme Court in *United States v. Johnson,* 383 U. S. 169, had interpreted the federal constitution's Speech or Debate clause to prohibit prosecution of a Congressman in a court of judicature for allegedly demanding or receiving a bribe to influence his legislative functions. He further asserted that it was the clearly recognized purpose of the Speech or Debate clause in the United States Constitution "to assure absolutely the total independence of the legislator and to afford him complete protection from a hostile executive or judicial branch of the government, while he is in the exercise of legislative functions." Blondes concluded in his motion to dismiss that since Maryland's Speech and Debate clauses had the same scope and objective as the federal constitutional provision it followed "that Maryland State legislators are cloaked with the same immunity from suit or criminal prosecution for acts or words connected to the exercise of their legislative functions, as Federal legislators."

The court reserved its ruling on Blondes's motion and the case thereafter proceeded to trial before the court sitting without a jury.

The State adduced evidence showing that the General Assembly of Maryland enacted legislation in 1967,[1] one effect of which was to make it unlawful for proprietors

---

1. Chapter 750 of the Acts of 1967.

of bowling alleys in Montgomery County to dispense alcoholic beverages or permit the consumption thereof on bowling alley premises. C. Edward Goldberg, a bowling alley proprietor in Montgomery County, appeared at a meeting of the Montgomery County Delegation to the General Assembly on November 27, 1967, urging amendment of the 1967 legislation to permit bowling alleys to obtain beer licenses and to permit consumption of alcoholic beverages on bowling alley premises. Goldberg told the Delegation that he represented a majority of the bowling centers in Montgomery County. Blondes, who was Vice Chairman of the Delegation, was present at this meeting. Other evidence adduced by the State showed that sometime in the latter part of 1967 Leroy Rinaldi, a personal friend of Blondes and the proprietor of a Montgomery County bowling alley, told Blondes of his dissatisfaction with the 1967 legislation; he expressed the hope to Blondes that the law could be changed. Blondes advised Rinaldi to discuss the matter with other bowling alley proprietors in Montgomery County and then come to see him. As a result, a number of bowling alley proprietors in Montgomery County met on December 10, 1967 and formed the Montgomery County Bowling Alley Proprietors' Association to consider "problems or matters that would affect us jointly." Blondes was not present at that meeting. It was nevertheless agreed at the meeting to employ Blondes to act as the Association's legal representative for one year for a retainer fee of $5,000 (to be collected through assessments levied against the Association's members). The only problem confronting the Association at that time concerned the 1967 legislation and the Association's desire that it be changed. Shortly after the Association's organizational meeting, Goldberg, Rinaldi and Armiger, another bowling alley proprietor, went to Blondes's office; they discussed the Association's legislative problems with Blondes and he indicated that he could be of assistance. Blondes said that the 1967 legislation was not intended to affect bowling alleys as it did and that it was "his opinion that that

legislation would be changed." According to Armiger and Goldberg, Blondes told them at that time that he could not lobby for the Association. On January 4, 1968 Blondes received a check for $5,000 which, in his letter of acknowledgment, he stated covered "the agreed legal fee" to represent the Association for the year 1968 "involving problems and matters pertaining to the Association and members thereof."

The State adduced further evidence showing that at the 1968 session of the General Assembly, which began on January 17, 1968 and concluded on March 26, 1968, Blondes was the primary sponsor of a bill which, if enacted, would have permitted consumption of alcoholic beverages on the premises of bowling alleys in Montgomery County. Other evidence was put forth by the State to show that Blondes discussed his bill with other members of the Montgomery County Delegation and sought to enlist their support for his measure. Amendments to Blondes's bill were proposed by Delegate McInerney at a meeting of the Montgomery County Delegation, their effect being, if adopted, to leave bowling alleys in the same legislative posture as they were placed by the 1967 legislation. Blondes then moved to amend McInerney's amendment "to read that they shall not apply to consumption of beer by patrons in bowling centers." The State's evidence showed that McInerney's amendments carried, that Blondes's amendment failed, and that ultimately, as enacted by the General Assembly, the bill continued the restraints placed upon bowling alleys substantially in accordance with the 1967 legislation.[2] On April 8, 1968 a meeting was held of the Association for the purpose of receiving "a progress report" from Blondes. At that time Blondes advised the Association that "beer was a dead issue and that the only way we could do it was that we would have to hire a public relations firm to educate the public on it." The

2. See Chapter 377 of the Acts of 1968. The evidence showed that Blondes voted in favor of the bill, as amended by McInerney, when it came before the House on the final roll call.

Association terminated Blondes's employment in October of 1968; it employed new counsel at that time to assist it with the same legislative problem that it failed to correct at the 1968 session of the Legislature.

There was testimony at the trial from two Montgomery County Delegates (Gore and Cook) that each heard Blondes announce that he was acting as legal counsel to the Association. Another Delegate (Wiser) testified that Blondes made no such announcement. There was other evidence showing that on one occasion Blondes was asked by the Association to assist it in a matter involving bowling alley closing hours and that he contacted the County Attorney's office on the Association's behalf (but without apparent success).

At the conclusion of the trial the court denied Blondes's motion to dismiss the indictment on the asserted ground of legislative immunity from prosecution. The court indicated that the Supreme Court's decision in *United States v. Johnson, supra,* involving the interpretation of the federal Speech or Debate clause, was not binding authority with respect to the Maryland Speech and Debate clauses, particularly since Section 50 of Article III of the Maryland Constitution imposed an express duty on the General Assembly, at its first session held after the adoption of the Constitution "to provide by Law for the punishment, by fine, or imprisonment in the Penitentiary, or both, in the discretion of the Court, of any * * * [member of the General Assembly] who shall demand, or receive any bribe, fee, reward, or testimonial, for the performance of his official duties, or for neglecting, or failing to perform the same." The court stated that the statute under which Blondes was indicted, Article 27, Section 23, was enacted by the Legislature in obedience to the constitutional mandate of Section 50 of Article III; that Section 50 of Article III constituted a constitutional limitation on the Speech and Debate clause in Article 10 of the Maryland Declaration of Rights; and that this specific constitutional provision took precedence over the general provisions in Article 10, with the

result that the Speech and Debate clause appearing in that Article was not applicable in bribery prosecutions under Section 23 of Article 27.

In its role as trier of fact, the court summarized the evidence adduced at the trial and concluded that the inferences properly drawn therefrom indicated that Blondes received the $5,000 fee from the Association "in part, at least, for influencing him in the performance of his official duties and that it was demanded or requested for that purpose." The court stated:

"I do not find that the picture as painted by the State's Attorney is as venal as he has contended. I don't believe that this was a planned operation to get and receive a bribe as such.

"But I do believe that the members of the Bowling Alley Association had only one major problem, and that was to get this legislation changed.

"I think they told that to the Defendant, that seems to be documented, and that he, amongst his other duties of representation throughout the year, led them to believe that he would get this legislation through the General Assembly. I don't find that there is anything that makes me question that as being one of the things in his mind.

"The fact of his introduction of these amendments before the delegation to help the bowling alley people in their problem is certainly confirmatory of, at least, some substantial proof, to my mind, of the state of mind that this Defendant had at the time he asked for and did receive this money.

"I don't believe that this Defendant had any feeling of moral guilt in that connection.

"I do think that he told people that he was representing them, and, I believe that he fully intended to represent them in other matters. But the fact remains that a part of the money

was to get him to sponsor and put through, or, at least, support legislation that would be in favor of the Bowling Alley Association.

* * *

"I have recited the instance of the attempted specific amendment to aid the bowling alley people, but, the Defendant was not so naive as to believe that when the bowling alley people, with their one major problem, came to him with their problem and he said he would help them out with it for this five thousand dollars annual retainer, he was certainly not so naive as to believe he was not being retained for the principal purpose of influencing him in trying to persuade members of the delegation to take favorable action on this bill.

"There again, I cannot know by divine insight what was in the Defendant's mind, but a lawyer-member of the legislature who does the things that the Defendant did do under these circumstances can only find himself to blame if the logical and reasonable inference is made from those actions.

"This case is not a blanket holding by any means, because it is not before me, of members of the legislature who might be on salaries or on established retainers. I don't pass on that one way or the other, it isn't before me.

"But under the circumstances of this particular case I do find that the inference beyond a doubt is that this money was received, at least in part, to influence the delegate in the performance of his duties, and this is sufficient to make a finding of guilty under the statutes, regardless of whether he intended to perform other duties or not."

Upon its guilty verdict, the court imposed a fine of $2,500 and, by operation of the provisions of Article 27, Section

23, Blondes was "forever disfranchised and disqualified from holding any office of trust or profit in this State."

With primary reliance upon *United States v. Johnson, supra,* Blondes contends on appeal, as he did below, that the Speech and Debate clauses in the Maryland Declaration of Rights and Maryland Constitution absolutely proscribe prosecution of a State legislator where such prosecution involves a judicial inquiry into his motives for things said or done during the legislative session involving the performance of the legislative functions of his office. He maintains that the prosecution against him "was incontrovertibly aimed at his motives for offering legislation, introducing legislation, and voting on amendments to legislation while in the Maryland House of Delegates during the 1967 and 1968 sessions," and that a prosecution so grounded directly contravenes the Maryland Speech and Debate clauses forbidding impeachment in a court of judicature of proceedings in the Legislature. To permit such a prosecution against a member of the General Assembly, he urges, "is to open a Pandora's Box of Grand Jury investigations, criminal prosecutions and civil suits all directed at an inquiry into legislators' motives and activities in the Legislature and would inevitably result in crippling the independence and security of the members of the House and Senate." Blondes maintains that nothing in Section 50 of Article III of the Maryland Constitution, which requires the Legislature to provide by law for the "punishment" of bribery by public officials, compels the conclusion that that constitutional provision was intended to wholly preempt application of the Speech and Debate clauses in the Maryland Declaration of Rights and Constitution.

## I

The immunity of legislators from prosecution by the executive and judicial branches of government for the performance of legislative acts evolved from the long struggle in England for parliamentary supremacy and first found written form in the English Bill of Rights

of 1689: "That the Freedom of Speech, and Debates or Proceedings in Parliament, ought not to be impeached or questioned in any Court or Place out of Parliament." 1 W. & M., Sess. 2, c. 2. As adopted in Section 6 of Article I of the Constitution of the United States, and the Constitutions of the various states, including Maryland, the legislative privilege afforded by speech and debate clauses has served both to protect the integrity of the legislative process by insuring the independence of individual legislators and to reinforce the separation of powers embodied in our tripartite form of government. *United States v. Johnson, supra.* Based on the history of the Speech or Debate clause, the Court in *Johnson* said that the legislative privilege was born to prevent intimidation by the executive and accountability before a possibly hostile judiciary; that "the instigation of criminal charges against critical or disfavored legislators by the executive in a judicial forum was the chief fear prompting the long struggle for parliamentary privilege in England and, in the context of the American system of separation of powers, is the predominate thrust of the Speech or Debate Clause." 383 U. S. at 182. Because of the semantic similarity, the Speech and Debate provision in Article 10 of the Maryland Declaration of Rights has been equated with the federal constitution's Speech or Debate clause. See Niles, *Maryland Constitutional Law* (1915), 13, 22. And in a thorough review of state constitutional provisions deemed analagous to the federal Speech or Debate clause, the Supreme Court, in *Tenney v. Brandhove,* 341 U. S. 367, 375, n. 5, made reference both to Article 10 and Section 18 of Article III of the Maryland Constitution. In view of their common derivation and purpose, we hold that the legislative privilege afforded under the dual provisions in the organic law of the State should be construed in *pari materia* with Article I, Section 6 of the federal Constitution, subject to any limitation imposed by other provisions of the Maryland Constitution. Compare *Freedman v. State,* 233 Md. 498, reversed on other grounds 380 U. S. 51; *Brown v.*

176

*State,* 233 Md. 288; *Bass v. State,* 182 Md. 496; *Blum v. State,* 94 Md. 375; *Lightman v. State,* 15 Md. App. 713, all involving Maryland constitutional provisions held to stand in *pari materia* with similar federal constitutional provisions.

Although the legislative privilege contained in the Maryland Declaration of Rights and Constitution has never been construed by the courts of this State, the Supreme Court has interpreted the federal Constitution's Speech or Debate clause on a number of occasions, most recently in *United States v. Brewster,* 408 U. S. 501, 33 L.Ed.2d 507. In that case, a United States Senator had been indicted for violating a federal bribery statute proscribing the demand or acceptance by a public official and member of Congress of anything of value in return for "being influenced in the performance of an official act," *viz.,* as charged in the indictment, being influenced with respect to his vote on legislation pending in the Congress. A motion to dismiss the indictment on the ground of legislative immunity under the Speech or Debate clause of the federal Constitution was granted by the lower court on the premise that the holding in *United States v. Johnson, supra,* constitutionally shielded the Senator from any prosecution for alleged bribery to perform a legislative act. The Supreme Court concluded that *Johnson* was not authority for that holding; that what *Johnson* held was that the Speech or Debate clause in Article I, Section 6 of the federal Constitution protected members of Congress from inquiry into legislative acts or the motivation for actual performance of legislative acts; that how a legislator acted, voted, or decided was inadmissible evidence in a federal bribery prosecution; that a member of Congress could nevertheless be prosecuted under a criminal statute provided the Government's case did not rely on legislative acts or the motivation for legislative acts, *i.e.,* acts generally done in Congress in relation to the business before it; that the Speech or Debate clause reaches and prohibits inquiry only into those things said or done in the legislative body

in the performance of official duties and the motivation for those acts. The *Brewster* court indicated that not all conduct merely "relating" to the legislative process was protected; rather, such protection was limited to acts clearly part of the legislative process—"the due functioning of the process." So, it concluded, the Speech or Debate clause protects against inquiry into acts which occur in the regular course of the legislative process and into the motivation for those acts; it does not prohibit inquiry into illegal conduct simply because it has some nexus to legislative functions. Nor does it prohibit inquiry into activities which are causally or incidentally related to legislative affairs but not a part of the legislative process itself. Consequently, it was the holding in *Brewster* that where no inquiry into legislative acts or motivation for legislative acts is necessary for the government to make out a *prima facie* case, the Speech or Debate clause does not prohibit prosecution. Referring to the federal bribery statute, in relation to the federal Constitution's Speech or Debate clause, the Court stated:

> "The question is whether it is necessary to inquire into how appellee spoke, how he debated, how he voted, or anything he did in the chamber or in committee in order to make out a violation of this statute. The illegal conduct is taking or agreeing to take money for a promise to act in a certain way. There is no need for the Government to show that appellee fulfilled the alleged illegal bargain; acceptance of the bribe is the violation of the statute, not performance of the illegal promise.
>
> "Taking a bribe is, obviously, no part of the legislative process or function; it is not a legislative act. It is not, by any conceivable interpretation, an act performed as a part of or even incidental to the role of a legislator. It is not an 'act resulting from the nature and execution of the office.' Nor is it 'a thing said or done by him as a representative in the exercise of the func-

tions of the office,' [Coffin v. Coffin] 4 Mass. 1, at 27. Nor is inquiry into a legislative act or the motivation for a legislative act necessary to a prosecution under this statute or this indictment. When a bribe is taken, it does not matter whether the promise for which the bribe was given was for the performance of a legislative act as here or, as in *Johnson,* for use of a Congressman's influence with the Executive Branch. And an inquiry into the purpose of a bribe 'does not draw into question the legislative acts of the defendant Member of Congress or his motives for performing them.' 383 U.S., at 185.

"Nor does it matter if the Member defaults on his illegal bargain. To make a prima facie case under this indictment, the Government need not show any act of appellee subsequent to the corrupt promise for payment, for it is *taking* the bribe, not performance of the illicit compact, that is a criminal act. * * *"

In *Gravel v. United States,* 408 U. S. 606, 33 L.Ed.2d 583, the Court held that the Speech or Debate clause protected members of Congress "against prosecutions that directly impinge or threaten the legislative process"; that committee reports, resolutions, and the act of voting are protected legislative acts; "that a member's conduct at legislative committee hearings, although subject to judicial review in various circumstances, as is legislation itself, may not be made the basis for a civil or criminal judgment against a member because that conduct is within the 'sphere of legitimate legislative activity' "; and that legislative acts, to be protected, "must be an integral part of the deliberative and communicative process by which members participate in committee and House proceedings with respect to the consideration and passage or rejection of proposed legislation or with respect to other matters which the Constitution places within the jurisdiction or either House." The Court concluded that "while the Speech or Debate clause recog-

nizes speech, voting and other legislative acts as exempt from liability that might otherwise attach, it does not privilege either Senator or aide to violate an otherwise valid criminal law in preparing for or implementing legislative acts."

Accepting the Supreme Court's interpretation of the legislative privilege as authoritative, and applying it to Article 10 of the Maryland Declaration of Rights and Section 18 of Article III of the Maryland Constitution, we think it plain that substantive evidence of legislative acts performed by Blondes, introduced in evidence against him, over his objection, was inadmissible and, because not harmless, requires a retrial unless the provisions of Section 50 of Article III nullify the Speech and Debate clauses insofar as a bribery prosecution of a member of the General Assembly is concerned, as contended by the Attorney General and found by the court below.[3]

## II

Section 50 of Article III was one of the original provisions of the Constitution of 1867. Then, as now, it provides:

> "It shall be the duty of the General Assembly, at its first session, held after the adoption of this Constitution, to provide by Law for the punishment, by fine, or imprisonment in the Penitentiary, or both, in the discretion of the Court, of any person, who shall bribe, or attempt to bribe, any Executive, or Judicial officer of the State of Maryland, or any member, or officer of the General Assembly of the State of Maryland, or of any Municipal Corporation in the State of Maryland, or any Executive officer

---

3. That Blondes was the primary sponsor of a bill favorable to bowling alley interests, that he sought support for it among his colleagues and that he offered amendments to preserve its original intent, are all legislative acts protected by the legislative privilege. The court's finding of guilt was plainly based, in part, upon consideration of Blondes's legislative actions.

of such corporation, in order to influence him in the performance of any of his official duties; and, also, to provide by Law for the punishment, by fine, or imprisonment in the Penitentiary, or both, in the discretion of the Court, of any of said officers, or members, who shall demand, or receive any bribe, fee, reward, or testimonial, for the performance of his official duties, or for neglecting, or failing to perform the same; and, also, to provide by Law for compelling any person, so bribing, or attempting to bribe, or so demanding, or receiving a bribe, fee, reward, or testimonial, to testify against any person, or persons who may have committed any of said offenses; provided, that any person, so compelled to testify, shall be exempted from trial and punishment for the offense, of which he may have been guilty; and any person, convicted of such offense, shall, as part of the punishment thereof, be forever disfranchised and disqualified from holding any office of trust, or profit, in this State."

The only reported debate respecting this constitutional provision appears in *Debates of the Maryland Constitutional Convention of 1867* (Perlman 1923), reporting the proceeding in the Convention of Wednesday, July 10, 1867, as follows:

"Section 46 [Section 50] was read. It inflicts a penalty on members of the Legislature and parties offering bribes.

"Mr. Merrick moved to strike out the entire section. The ordinary penal laws provided for the punishment of the offenses therein named, and this was the first time that it was proposed to put such a provision in the organic law of the State. Was there any necessity for inserting such a provision? * * *

"Mr. Brown said the section was one of very

great importance. The question was simply this: Shall the ancient honor of the State of Maryland be kept untarnished or not? * * * Because he (Mr. B.) saw that the purity of our institutions was involved, he earnestly advocated the adoption of this section, or something better. In reply to the objection of the gentleman from Howard, (Mr. Merrick,) he maintained that there was a necessity for this section. He could not prove before a jury that bribery and corruption had of late prevailed in our legislative bodies, but the charge had been made, not only by the people, but by the press, and with such proofs that he believed it." Perlman, *supra,* at 285-286.

After some further unreported debate, the section was adopted as reported. The following year, the Legislature executed the constitutional mandate by enacting what is now codified as Article 27, Section 23.[4]

Presently, the Constitutions of eleven other states contain provisions for court adjudication of bribery committed by legislators.[5] The only case law explication pointing to the reason for including such a provision in state constitutions is found in *King v. State,* 203 A. 2d 74 (Del.); there, the court held that the founders included

---

4. The original Maryland Constitution of 1776 contained a limited bribery provision in Section 54:

"That if any person shall give any bribe, present, or reward, or any promise, or any security for the payment or delivery of any money, or any other thing, to obtain or procure a vote, to be governor, senator, delegate to Congress, or assembly, member of the council, or judge, or to be appointed to any of the said offices, or to any office of profit or trust, now created or hereafter to be created in this State, the person giving and the person receiving the same, on conviction in a court of law, shall be for ever disqualified to hold any office of trust or profit in this State."

The Maryland Constitutions of 1851 and 1864 were silent on the subject of bribery.

5. Ala. CONST. Art. IV, § 79; Ark. CONST. Art. V, § 35; Colo. CONST. Art. V, §§ 40, 41, Art. XII, § 6; Del. CONST. Art. II, § 22; La. CONST. Art. XIX, § 12; Mont. CONST. Art. V, §§ 41, 42; N.M. CONST. Art. IV, §§ 39, 40; N.D. CONST. Art. II, § 40; Tex. CONST. Art. XVI, § 41; W. Va. CONST. Art. VI, § 45; Wyo. CONST. Art. III, § 42.

such a provision in the organic law of Delaware to insure that legislatures could not by statute remove the criminal penalties the common law imposed on their members. The court said: (pp. 76-77)

"Therefore, it appears reasonably clear that the constitutional purpose in specifically denouncing bribery was an intention that mere legislative action would be insufficient to remove it from the sphere of criminal activity and that, upon conviction of such crime the accused would be disabled from holding public office."

Whether inclusion of Section 50 in the Maryland Constitution can be attributed to the reasons set forth in *King* cannot be ascertained with any degree of certainty from the sparse history pertaining to the section's enactment. We note, as hereinafter set forth, that bribery was a common law offense at the time the Maryland Constitution was enacted in 1867. See Perkins on Criminal Law, (2nd Ed. 1969), pp. 468-469. Reading the mandate of Section 50 literally, no directive was given that the offense of bribery be provided for by statute; rather it directed legislative enactment of a statute to punish that common law crime, "by fine, or imprisonment in the Penitentiary, or both, in the discretion of the Court," with the further direction that such punishment render the person convicted "forever disfranchised and disqualified from holding any office of trust or profit in this State."

We find little to support the lower court's conclusion that Section 50 constitutes an express exception to the legislative immunity provisions contained in Article 10 of the Maryland Declaration of Rights and Section 18 of Article III of the Maryland Constitution; those provisions, like the provisions of Section 50 of Article III, were included in the Constitution at the time of its enactment in 1867. Under well-established principles of constitutional construction, courts must construe the constitution as a whole, *Boyer v. Thurston,* 247 Md. 279,

*Reed v. McKeldin,* 207 Md. 553, *Co. Com'rs v. Supervisors of Elec.,* 192 Md. 196, *Johnson v. Duke,* 180 Md. 434, harmonizing each provision with the other provisions thereof where possible to do so, *Reed v. McKeldin, supra, Co. Com'rs v. Supervisors of Elec., supra, Dyer v. Bayne,* 54 Md. 87, the construction being favored which will render every part and every word operative as against a construction which will render some portions or words nugatory, *Reed v. McKeldin, supra, Groome v. Gwinn,* 43 Md. 572.

The language of Article III, Section 18 is absolute and admits of no exception: "No * * * Delegate * * * shall be liable in any * * * criminal prosecution, whatever, for words spoken in debate." Construing Article III, Section 50 as an express exception thereto would nullify the ordinary meaning of the word "whatever" in violation of the principles of *Reed* and *Groome.* But beyond that, and far more fundamental, it is eminently reasonable to harmonize legislative immunity and bribery prosecutions of legislators in accordance with the reasoning and holding of the Supreme Court in *Brewster.* We thus construe Section 50 of Article III as a limited mandate providing for punishment of State legislators guilty of bribery if indictment and prosecution therefor can be accomplished without impinging on the legislative privilege by introducing evidence of legislative acts. It follows, of course, that Article 27, Section 23, executed in compliance with that mandate, *Brown v. State,* 233 Md. 288, cannot do more.[6]

Our holding today insures the degree of separation of powers inherent in our form of government (see *Fletcher v. Peck,* 10 U. S. 87) by dispensing with the impropriety of executive or judicial inquiry into the motives of legislators. But nothing in our holding in any way derogates

---

6. Since we are unable to find that an exception to the Speech and Debate clauses was intended, it is unnecessary to consider the question, reserved in both *Johnson* and *Brewster,* as to the constitutionality of permitting introduction of evidence of legislative acts under a statute (or constitutional provision) plainly intended as a narrowly drawn exception to the Speech or Debate clause.

the egregious nature of bribery by a member of the Legislature nor suggests that it go unpunished. The Legislature has the power to keep its own house in order, Maryland Constitution, Article III, Sections 19 and 26, and the courts may still act under Article 27, Section 23 if the prosecution can prove its case without inquiry into legislative acts. The closing provision of Article 27, Section 23 providing for compellable testimony, interpreted as a grant of wide immunity in *Brown v. State, supra,* should facilitate any necessary court prosecutions without impingement on the legislative privilege. Since the trial judge erred in relying upon substantive evidence of Blondes's legislative acts, we shall order a new trial purged of references to legislative acts prohibited by the legislative privilege.

## III

In light of our decision, it is unnecessary to consider Blondes's argument pertaining to the sufficiency of the evidence; as guidance in event of retrial, however, we shall briefly discuss this issue.

During consideration of Blondes's motion for judgment of acquittal, the trial judge stated that Article 27, Section 23 is "more all inclusive than common law bribery." Considering this remark to have been made in the context of a historical review of Maryland constitutional and statutory provisions on bribery, its clear purport is that Article 27, Section 23 expanded the class of bribees under the common law from judges and jurors to members of the General Assembly. In fact, this was not a statutory change but an evolution of the common law firmly established in both England and the United States at the time of the adoption of the Maryland statute. See Wharton, *A Treatise on the Criminal Law of the United States* (4th Ed. 1857), Sections 2814-2815, p. 1026.

In the contemporary decision of *State v. Ellis,* 33 N.J.L. 102, 97 Am. Dec. 707 (N. J. 1868), a member of the common council of Jersey City, charged with re-

ceiving a bribe in return for his favorable vote on a matter pending before that council, moved to quash the indictment on the ground that he was not a public official within the ambit of common law bribery. The court stated:

> "It is said that the common-law offense of bribery can only be predicated of a reward given to a judge or other official concerned in the administration of justice. The earlier text-writers thus defined the offense: 'Where any man in judicial place takes any fee or pension, robe or livery, gift, reward, or brokage of any person that hath to do before him in any way, for doing his office, or by color of his office, but of the king only, unless it be meat and drink, and that of small value.' 3 Inst. 145. * * * The later commentators, supported as I think by the adjudged cases, however, maintained the broader doctrine, that any attempt to influence an officer in his official conduct, whether in the executive, legislative, or judicial department of the government, by the offer of a reward or pecuniary consideration, is an indictable common-law misdemeanor: 3 Greenl. Ev., sec. 71; Bishop's Crim. Law, sec. 95, and notes; 1 Russell on Crimes 156." *State v. Ellis, supra,* 97 Am. Dec. at 708.

We think Article 27, Section 23 is a statute declaratory of the common law (see *Glickfield v. State,* 203 Md. 400) and that the trial judge's conclusion that it was "more all inclusive than common law bribery" was technically inaccurate.

We find no merit in Blondes's contention that Article 27, Section 23 is void for vagueness under the Fourteenth Amendment to the United States Constitution and Article 23 of the Maryland Declaration of Rights, nor in the corollary argument that the indictment drawn in the words of the statute is so vague and indefinite as to fail

to inform him of the charges against him in violation of Article 21 of the Maryland Declaration of Rights.

The Court of Appeals considered and rejected a similar challenge to indictment under Article 27, Section 23 in *Cunningham v. State,* 190 Md. 578. In sustaining that indictment charging bribery of a police officer, it was held:

> "Here, the statute forbids the bribing of an officer to influence him in the performance of his official duties. The essence of the crime is the passing of money to the officer to influence the officer in the performance of his official duties. The words of the indictments charged the accused with giving the officer money in order to influence the said officer in the performance of his official duties. The indictments are plainly laid in the words of the statute and *are sufficient to inform the accused of the charge against him.*"

(Emphasis added.) *Id.* at 583.

In view of *Cunningham,* we find no constitutional or other deficiency in the indictment.

> *Judgment reversed; case remanded for a new trial; costs to be paid by the County Council of Montgomery County.*